James Albert BRAUSCH, Appellant,

v.

Tracy L. BRAUSCH, now ather, Appellee.

No. 2007–CA–002198–ME.

Court of Appeals of Kentucky.

Sept. 12, 2008.

As Modified Sept. 26, 2008.

Carl E. Knochelmann Jr., Covington, KY, for appellant.

Thomas A. Wietholter, Cincinnati, OH, for appellee.

Before THOMPSON and VANMETER, Judges; HENRY,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

James Albert Brausch appeals from an order of the Kenton Family Court awarding child support to Tracy L. Brausch, now Sather. He alleges that: (1) the court miscalculated the child support owed; (2) the court erroneously refused to abate the child support during his summer parenting time; and (3) the court should have included the earned income tax credit (EIC) and additional child tax credit received by Tracy in its child support calculation.

On May 19, 2005, the parties entered into an agreed order modifying child support owed by James for their three children while he was attending nursing school. Pursuant to that agreement, child support was to be recalculated one month after James' graduation when his income would increase.

James graduated from nursing school in May 2006; thus, by the terms of the agreement, child support was calculated effective July 1, 2006. A hearing was not held by the family court until July 2007, at which time James had been employed as a nurse for approximately one year. Consequently, the family court had available the record of James' income and, pursuant to the terms of the agreed order, considered James' year-to-date income as of June 30, 2006, through December 31, 2006. Based on his monthly income for those six months, the family court calculated James' monthly income to be $2,923.

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

The court then recalculated the child support effective July 20, 2007, when one child became emancipated. In doing so, the court multiplied James' hourly wage, $14.89, by a forty-hour work week. Based on that calculation, it found his monthly income to be $2,581 per month.

James was ordered to pay $770 per month for three children from July 1, 2006, through July 20, 2007. Thereafter, he was ordered to pay $551 for two children. James concedes that the methodology used to calculate his income from July 20, 2007, forward was correct. However, he objects to the calculation of his income for the period from July 1, 2006, to July 20, 2007.

■ James contends that the family court erroneously calculated his support obligation on the income earned in the last six months of 2006 rather than the entire year. Because he was in school, and had not yet reached the earning capacity of a nurse, James' income during the first six months of 2006 was considerably lower than during the last six months of that year. He further alleges that a portion of his income in the latter part of that year was attributable to a temporary and non-recurring pay increase.

In *Keplinger v. Keplinger*, 839 S.W.2d 566, 569 (Ky.App.1992), this Court held that "KRS 403.212(2)(a) must be read as creating a presumption that future income will be on a par with the worker's most recent experience." Although James relies on *Keplinger* to support his position that his income for all months in 2006 should have been included in the calculation of his monthly income, the holding suggests the opposite.

Pursuant to the parties' agreement, the court was requested to calculate child support effective July 1, 2006. Although James seeks to lower his child support obligation by including his earnings while in nursing school, such a methodology is contrary to the agreement and would not correctly reflect his earning capacity for the purpose of calculating child support. The court had the benefit of James' actual earnings during the period in question and, therefore, was not projecting his future income in his capacity as a nurse. Based on the evidence, the family court's calculation was not an abuse of discretion. *Van Meter v. Smith*, 14 S.W.3d 569 (Ky.App. 2000).

■ We also find no abuse of the family court's discretion when it denied James' request to suspend child support during the four weeks in the summer when he has parenting time. We agree with the family court's conclusion that Tracy must maintain the home and incur continued expenses for the benefit of the children even in the children's brief absence from the home.

The final error we address, and the most complex, is the family court's refusal to include the earned income tax credit and additional child tax credit Tracy received pursuant to the Internal Revenue Code in the child support calculation. In 2006, Tracy received an earned income tax credit in the amount of $4,062 and an additional child tax credit in the amount of $3,000. Although the $7,062 was directly received by Tracy and available for the support of the children, it was not included in income for the purpose of calculating her share of the child support responsibility.

Kentucky Revised Statutes (KRS) 403.212 establishes the child support amount that each parent is responsible for based on the total gross income of the parties as set forth in the child support guidelines which is then divided between the parents in proportion to their combined monthly adjusted gross income. In relevant part, the statute provides that:

b) "Gross income" includes income from any source, except as excluded in this subsection, and includes but is not limited to income from salaries, wages, retirement and pension funds, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, Supplemental Security Income (SSI), gifts, prizes, and alimony or maintenance received. Specifically excluded are benefits received from *means-tested public assistance programs,* including but not limited to public assistance as defined under Title IV–A of the Federal Social Security Act [FN1], and food stamps. KRS 403.212(b) (emphasis added). If, as Tracy suggests, the EIC and the additional tax credit received are means-tested public assistance programs, the exclusion of that income was proper.

Although within KRS Chapter 403 the term "public assistance" is undefined, the definition contained in KRS 205.010 applies. "Public assistance" is defined as "money grants, assistance in kind, or services to or for the benefit of needy aged, needy blind, needy permanently and totally disabled persons, needy children, or persons with whom a needy child lives or a family containing a combination of these categories[.]" KRS 205.010(3).

The resolution of whether the EIC is a public assistance program begins with a brief review of its history. The EIC is a dollar-for-dollar credit that reduces a person's tax liability because it is treated as a "payment" of tax and subtracted from the taxpayer's liability under that year's tax tables. "Unlike certain other credits, which can be used only to off-set tax that would otherwise be owed, the earned-income credit is 'refundable.'" If an individual's earned income credit exceeds his tax liability, the excess amount is considered an overpayment and he receives the difference as if he had overpaid his taxes in that amount. *Sorenson v. Secretary of Treasury,* 475 U.S. 851, 854–855, 106 S.Ct. 1600, 1603–1604, 89 L.Ed.2d 855 (1986). As in Tracy's case, it is a gratuitous payment for working taxpayers who earn below a certain amount.

Germane to our present discussion is the purpose of the EIC and the intent of Congress when enacting the legislation. Although the EIC is "given effect through the income tax laws, [it] is in substance an item of social welfare legislation intended to provide low-income families with the very means by which to live." *In re Brown,* 186 B.R. 224, 226 (Bkrtcy.W.D.Ky. 1995) (internal quotation and citation omitted). The primary goals of the EIC were stated in *Brown:*

This Court has looked at the legislative history of the earned income credit and finds that Congress intended the credit to provide economic relief to low income workers with dependent children. S.Rep. No. 94–36, 94th Cong., 1st. Sess. 11 (1975), *reprinted in* [1975] U.S.Code Cong. & Admin. News 54, 64; *See also Sorenson v. Secretary of the Treasury,* 475 U.S. 851, 864, 106 S.Ct. 1600, 1608–09, 89 L.Ed.2d 855 (1986). One of the primary goals of the credit is to provide a bonus or incentive for low-income people to work and support themselves. S.Rep. No. 94–36, *reprinted in* [1975] U.S.Code Cong. & Admin.News at 64; *In re Davis,* 136 B.R. 203, 206 (Bankr. S.D.Iowa 1991). Another congressional goal is to reduce the disincentive to work caused by Social Security taxes on earned income. *Sorenson,* 475 U.S. at 864, 106 S.Ct. at 1608–09; *In re Goldsberry,* 142 B.R. 158, 159 (Bankr.E.D.Ky. 1992). Finally, Congress also intended

for the credit to stimulate the economy by funneling funds to persons likely to spend the money immediately. *Sorenson*, 475 U.S. at 864, 106 S.Ct. at 1608–09; *Davis*, 136 B.R. at 206.

*Id.* The court in *Brown* considered the nature of the EIC in the context of a bankruptcy proceeding and whether it is public assistance as defined in KRS 205.010 and, therefore, exempt from creditors. The court concluded that the EIC is a public assistance grant similar to other state and federal income-based grant programs such as Aid to Families with Dependent Children and food stamps.

We agree with the court in *Brown* that as defined under Kentucky statutory law, the EIC is a public assistance program. The purpose of the credit is directed toward supplementing the income of the neediest of families and affords relief to those earning no more than the phaseout amount which with two or more qualifying children is $11,610. It is a money grant to assist "needy" families.

The second point of inquiry is whether it is "means-tested." A "means-tested" program is, precisely as the term implies: eligibility is directly dependent on the basis of income or resources. Thus, greater earnings yield less assistance. *Vaughn v. Sullivan*, 83 F.3d 907, 908 (7th Cir.1996). The amount of the EIC decreases as the taxpayer's earnings increase. I.R.C. § 32. It cannot therefore, be earnestly argued that it is not a "means-tested public assistance program."

We are not so easily persuaded that the additional child tax credit is within the parameters of a "means-tested public assistance program." As its title expresses, the additional child tax credit is in addition and tied to the dependency exemption and permits an additional child tax credit for families with "qualifying" children. I.R.C. § 24. Unlike the EIC which has a low income level for eligibility and obviously targeted at aiding those living at the poverty level, the additional child tax credit begins to phaseout only when a taxpayer's adjusted gross income reaches $110,000 in the case of a joint return.

The disparate income levels applicable to the EIC and the additional child tax credit are pivotal to our inquiry. Although the EIC is accepted as social welfare legislation intended to provide low-income families with the means to live, the same cannot be said in regard to the additional child tax credit. A family earning $110,000 per year is not "needy" as that term is commonly understood and used in KRS 205.010. *See In re Steinmetz*, 261 B.R. 32 (Bkrtcy.D.Idaho 2001). The credit may enhance the lifestyle of the recipient but is not required to meet the everyday necessities of life. We conclude that the high income threshold adopted by Congress indicates that it is not public assistance legislation targeted at the most needy taxpayers.

Because we have concluded that the additional child tax credit is not a means-tested assistance program, it is not specifically excluded from gross income. KRS 403.212. Having resolved the initial contention, we now turn to the question of whether it is income or properly treated as a federal tax benefit included within the dependency exemption.

While not in the traditional sense income in the form of a salary or that derived from active or passive investments, it nevertheless can confer a substantial financial benefit upon the recipient which in this case was $3,000. That benefit, however, is contingent upon, and in addition to, the dependency exemption and received as the result of claiming qualifying children. Thus, it cannot be claimed in isolation but must be allocated the same as the depen-

dency exemptions rather than included in income.

The allocation of dependency exemptions between parents has traditionally been left to the state courts. *Hart v. Hart,* 774 S.W.2d 455 (Ky.App.1989). "The trial court is to be guided in the exercise of its discretion by making an allocation which will best maximize the benefit of the exemption and the amount available for the care of the children." *Pegler v. Pegler,* 895 S.W.2d 580, 581 (Ky. App.1995) (internal citations and quotations omitted). We add to this well-established rule that the courts are guided by balancing the equities between parties, including their respective incomes.

■ The agreed order effective May 19, 2005, provides that for the calendar years 2004, 2005, and 2006, Tracy shall have all the children as deductions "for all federal and state tax purposes such as deductions, tax credits and all other purposes the party is entitled to on their federal or state income tax return." Thus, James cannot legitimately argue that he was entitled to claim the dependency exemption and the additional child tax credit for 2006.

■ Following the hearing, the family court awarded each party one of the children as a deduction for all federal and state income tax purposes which would include any available tax credits available to either party. An equal division of the dependency exemptions and its benefits conferred is a simplistic and equitable division and negates any speculation that the division is inequitable to either party. Although we cannot mandate that the family courts make such a division in all cases, we encourage simplicity and expediency. The equal division of the tax benefits was not an abuse of discretion. *Downing v. Downing,* 45 S.W.3d 449 (Ky.App.2001).

We conclude our discussion with the recognition that the view we express today can have inequitable consequences. Excluding money received as a result of the EIC from the recipient's gross income is particularly troublesome where, as here, the non-recipient has a high income as compared to that of the recipient. Tracy received in excess of $4,000 that was not included as income. We are cognizant that the recipient of the EIC can freely retain the funds without obligation to contribute to the support of the children.

Such a result is inconsistent with the spirit of the child support statutory scheme but mandated by the current language of KRS 403.212. Perhaps such is attributable to the enactment of the Child Support Guidelines in 1990, which was seven years prior to the enactment of the EIC. The EIC appears to be a relatively unnoticed federal tax provision in the context of its impact on child support obligations. However, until the General Assembly undertakes to change the statutory law, this Court is bound to follow its dictates.

Based on the foregoing, the order of the Kenton Family Court is affirmed.

ALL CONCUR.