*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GREGORY C. MARTIN, JR., | ) | |
| | ) | Supreme Court No. S-14508 |
| Appellant, | ) | |
| | ) | Superior Court No. 3HO-06-00127 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MELODY C. MARTIN, | ) | |
| | ) | |
| Appellee. | ) | No. 6787 – June 14, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Peter G. Ashman, Judge pro tem.

Appearances: Gregory C. Martin, Jr., pro se, Homer, Appellant. No appearance by Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

Five years after dissolving their marriage, the parents of two children sought to change or clarify aspects of their original decree. The superior court found circumstances had not changed sufficiently to modify the parties' custody agreement, but made changes to the visitation schedule. The superior court also ruled on child support, life insurance, the children's Permanent Fund Dividends, and attorney's fees. The father appeals. Because the superior court's child support award was erroneously calculated,

and because the superior court linked its assignment of federal income tax deductions with the erroneous calculation of child support, we reverse those parts of the superior court's order and remand for renewed consideration. We affirm the superior court's rulings in all other respects.

## II.    FACTS AND PROCEEDINGS

Gregory and Melody Martin married in 1996 and had two children. They dissolved their marriage in 2006, when their children were seven and five years old. With their dissolution petition the couple submitted a detailed parenting agreement providing for joint legal and shared physical custody of the children. By the terms of the agreement, the children would be with Melody during the week and Gregory on weekends. For child support purposes, the parties calculated that Melody would have the children 70% of the time and Gregory would have them 30% of the time, although, based on computing three nights out of seven, their agreement was a 57% - 43% shared custody arrangement. The parties agreed to "provide the children with visitation with the grandparents and extended family on their own side of the family . . . during their custody time." They agreed that Melody would apply for the children's Permanent Fund Dividends each year and place the money in an investment account and that Melody would claim the children on her federal income taxes each year.

In late 2010 the parties filed cross-motions to modify the child custody terms of their dissolution. Gregory alleged that he actually had exercised physical custody nearly 50% of the time and sought a change in the decree to reflect this. Melody countered that she had the children 58% of the time, but she also asked the court to modify the decree to give her some weekend time with the children.

The superior court held a hearing on the cross-motions in March 2011 and issued findings of fact and conclusions of law in May. The parties "struggled with

interpreting the summer schedule set out by the court," so the court clarified its rulings in an August 2011 order.

Gregory appeals.

## III.   STANDARD OF REVIEW

"The superior court has broad discretion in deciding child custody issues,"[1] including whether a proposed custody modification is in the children's best interests.[2] We reverse the superior court "only if the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[3] An abuse of discretion occurs when "the superior court considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[4] "A factual finding is clearly erroneous if, after reviewing the record as a whole, we are left with a definite and firm conviction that a mistake has been made."[5] Whether tax credits or other sources of income are included as income for purposes of Alaska Civil Rule 90.3 is a matter of law we review de novo.[6] We review

---

[1]     *Hunter v. Conwell*, 276 P.3d 413, 418 (Alaska 2012) (quoting *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010)) (internal quotation marks omitted).

[2]     *Heather W. v. Rudy R.*, 274 P.3d 478, 481 (Alaska 2012) (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)).

[3]     *Havel v. Havel*, 216 P.3d 1148, 1150-51 (quoting *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991)) (internal quotation marks omitted).

[4]     *Heather W.*, 274 P.3d at 481 (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

[5]     *Havel*, 216 P.3d at 1151 (citing *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[6]     *See Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002) ("The proper method of calculating child support is a question of law, which we review de novo,
(continued...)

an award of attorney's fees for abuse of discretion,[7] but "the determination of which statute or rule applies to an award of attorney's fees is a question of law that we review de novo."[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Modifying The Visitation Schedule.

The Martins' 2006 agreement was that Gregory would have custody of the children every weekend from Friday at 6:00 p.m. until Monday morning — three nights a week. This arrangement resulted in a 57% - 43% physical custody division, but the Martins' child support calculation indicated a 70% - 30% division.

In 2010 the Martins cross-moved for custody modification. Gregory argued the original order reflecting a 70% - 30% physical custody division was incorrect and the computed division should have been 58% - 42%. He contended he actually had custody 46% to 48% of the time during the prior three years and requested a custody modification providing an equal division, with each parent having the children in alternating weeks. Melody agreed the decree should be modified to reflect a 58% - 42% division, but opposed Gregory's proposed modifications of the custody agreement. She argued Gregory had custody only 42% of the prior three years, as set forth in the 2006 Parenting Agreement. Melody requested modifications also, asking for custody two weekends each month and that weekends end on Sunday nights instead of Monday mornings.

---

[6]    (...continued)
adopting the rule of law that is most persuasive in light of precedent, reason, and policy." (citing *Spott v. Spott*, 17 P.3d 52, 55 (Alaska 2001))).

[7]    *McDonald v. Trihub*, 173 P.3d 416, 420 (Alaska 2007) (citing *Valley Hosp. Ass'n v. Brauneis*, 141 P.3d 726, 729 (Alaska 2006)).

[8]    *Id.* (citing *Koller v. Reft*, 71 P.3d 800, 808 (Alaska 2003)).

The court held a hearing on the parties' motions in March 2011. In its May 2011 order the superior court stated that it was "concerned that a shared custody agreement may not be appropriate" because the Martins "disagree on many . . . day-to-day issues and seem to be unable to discuss any of their issues appropriately or effectively." Because it could not "see a way to make the children's lives any better," the court felt "resigned to simply adjust and clarify the custody arrangement so as to minimize the need for contact between the parties." The court concluded there had been no significant change in circumstances warranting a custody modification, and because the existing arrangement had worked for several years, the court decided to "maintain approximately the same division of time" but "reconsider the way in which that time is actually allocated." During the school year, the court decided Melody should have custody one weekend each month, with that time being made up by awarding Gregory additional summer visitation.

After the superior court's ruling, Gregory contended that the court failed to divide custody in the same percentage that had developed between the parties. In August 2011 the court stated that its May 2011 decision had been an attempt "to fashion a schedule that was in the best interests of the children and which would reduce the number of encounters between parties who so plainly cannot get along." The court declined to change the percentage of time each parent had the children because it considered the children's best interests and fewer encounters between the Martins to be "more important than any fractional advantage to one party or the other." The court also decided that "[b]ecause [Gregory] has most of the summer, any days that both of the children spend overnight at camp shall be counted as part of the father's weeks."

Gregory contends the superior court erred in finding no substantial change in circumstances yet modifying the visitation schedule in the parties' original parenting

agreement. He argues the court "reduced" his custody in its order and also claims he is entitled to an equal custody division.

We conclude the superior court did not err in its order modifying the custody schedule. Alaska Statute 25.20.110(a) provides that "[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change of circumstances requires the modification of the award and the modification is in the best interests of the child." A party seeking custody modification must first make a prima facie showing that a significant or substantial change in circumstances has occurred "relative to the facts and circumstances that existed at the time of the prior custody order."[9] However, "a lesser showing is required for a 'change in circumstances' determination when a parent seeks to modify visitation rather than custody."[10] The superior court could therefore properly modify the time-sharing schedule as set out in the parties' agreement yet find that Gregory had not made a sufficient showing to modify the underlying custody provisions of that agreement.

The superior court listed several factors that had *not* changed in the years since approval of the parties' dissolution agreement, and it consequently decided to "maintain approximately the same division of time." This ruling was both legally and factually sound. But it also found a change in the visitation schedule would be in the children's best interests because of ongoing conflicts between the parents and the need to minimize contact between the parents. Under the superior court's May order, Gregory was awarded custody 42% of the time, and Melody was awarded custody 58% of the

---

[9]     *Heather W.*, 274 P.3d at 481 (citing *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001); *Jenkins*, 10 P.3d at 589).

[10]     *Collier v. Harris*, 261 P.3d 397, 408 (Alaska 2011) (citing *Havel*, 216 P.3d at 1151 n.6); *see also id.* at 408 n.35 (explaining "visitation" is synonymous with "custody schedule" in shared physical custody context).

time.  This division is very close to the parties' original agreement, and we see no abuse of discretion in the superior court's decision.

Gregory also argues the superior court erred in ordering that time spent at overnight summer camps should be counted as part of his time.  We might agree with Gregory had the superior court's order unfairly allowed Melody to enroll the children in camps during Gregory's physical custody time.  We do not read the order as allowing this, and we caution that neither party should commit the children to overnight camps during the other parent's physical custody period without the other parent's consent.  The superior court appropriately fashioned a method for scheduling the children's summer activities, with the court to resolve any disputes, so it appears the superior court fashioned a method to promote a clear summer schedule for the children and minimize the risk of mid-summer scheduling conflicts.

**B.**     **The Superior Court Did Not Err In Declining To Grant Gregory's Parents Separate Visitation.**

Gregory argues the superior court should have ordered "autonomous visitation" for his parents under AS 23.30.065 and contends the court shortened his time with the children because the children spend two weeks with his parents, with those overnights counting as part of his custody.

The superior court did not err in declining to grant separate visitation for Gregory's parents.  Under the terms of the parties' agreement, each parent agreed to "provide the children with visitation with the grandparents . . . on their own side of the family . . . during their custody time."  The two weeks the children spend with Gregory's parents were part of Gregory's custody under the initial agreement, and the superior court did not err by declining to allocate separate time for Gregory's parents as part of its modification order.  Furthermore, Gregory has no standing to assert any potential rights his parents may have under AS 23.30.065.

## C. There Was Error In Calculating Child Support.

Gregory argues that the superior court incorrectly applied Alaska Civil Rule 90.3 when it calculated child support by: (1) ordering that Melody could claim both children as dependents on her federal tax return after allowing Gregory a deduction for health insurance payments; (2) excluding from Melody's income a stipend she receives for children she adopted after the dissolution; and (3) deciding the parties did not need to report income tax refunds as income. We agree with Gregory on his first argument, although not in the precise manner raised, but disagree with Gregory on the other arguments.

### 1. Health insurance costs

The parties originally agreed that Melody could claim both children as dependents on her federal income taxes. In his motion to modify, Gregory asked the court to order each parent to claim one child as a dependent when filing his or her federal tax return. Gregory also sought to deduct from his income the entire amount of his monthly medical insurance premium, even though the premium was the same whether he covered only himself or added his family. The court allowed Gregory to deduct the entire amount of his medical insurance premium; because the court considered this deduction from his gross income "a benefit" to Gregory, it decided that Melody could continue to claim both children as dependents for federal income tax purposes.

Because the superior court concluded that allowing Melody to continue claiming both children as dependents for federal income tax purposes was warranted by its decision granting Gregory the "benefit" of deducting his entire medical insurance premium from his gross income, deciding Gregory's claim of error requires examining the bases of both decisions. Gregory understandably did not challenge whether the health insurance ruling was correct, but we may raise and consider an issue of law that

is "critical to a proper and just decision."[11] "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[12] Under Rule 90.3(d)(1) the superior court shall "require health insurance for the children if insurance is available to either parent at a reasonable cost." The rule also provides in relevant part:

> The cost of insurance is the cost attributable to the children for whom support is paid. If the cost to the employee of covering the employee alone is the same as the cost to the employee of covering the employee and dependents, then there is no additional cost to the employee for adding the children and no portion of the cost of coverage may be allocated to the children.[13]

Although the insurance cost is allocated equally between the parents,[14] "the cost to be allocated is limited to that portion of the total cost necessary to insure the children involved — not the parent."[15] Accordingly, it was plain error to allow Gregory to deduct his insurance premium from his gross income.[16] Because the cost of insurance is the same whether or not the children are added, Gregory is not entitled to either a deduction or a credit for the health insurance. We reverse the superior court's treatment of the cost

---

[11]    *See Vest v. First Nat'l Bank of Fairbanks*, 659 P.2d 1233, 1234 n.2 (Alaska 1983) (explaining plain error rule and circumstances in which court will raise issue sua sponte).

[12]    *Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1124 (Alaska 1996) (quoting *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)).

[13]    Alaska R. Civ. P. 90.3(d)(1).

[14]    *Id.*

[15]    Alaska R. Civ. P. 90.3 Commentary, VII.A.

[16]    Rule 90.3(d) also states that the cost of health care coverage for the children is subtracted from the amount of child support, not from gross income.

of health care coverage and remand for recalculation of support. Because the superior court linked the health care deduction and claiming dependents for tax purposes, the superior court should reconsider its decision to permit Melody to continue to claim both children as dependents on her federal income tax return.

### 2.    Adoption subsidies

Gregory contends that the court erred in excluding from Melody's income a stipend from the state for children she adopted after the dissolution. The state pays Melody an Alaska Adoption Subsidy for the children; these subsidies are paid when the Department of Health and Social Services decides that children are hard to place.[17]

Although Rule 90.3 requires the court to consider a parent's income "from all sources," certain payments are not considered income for purposes of the rule.[18] Addressing whether adoption subsidies and foster care payments should be included in a parent's income when computing child support, other courts have held that "because these payments are intended to benefit the adopted or foster child, they are considered income to the child and not to the parent."[19] One court has explained that foster care payments "are received by the foster parent acting in a fiduciary capacity" and "the

---

[17]    AS 25.23.190–.230.

[18]    Alaska R. Civ. P. 90.3(a); Alaska R. Civ. P. 90.3 Commentary, III.A.

[19]    *In re Marriage of Dunkle*, 194 P.3d 462, 465 (Colo. App. 2008); *see also Hamblen v. Hamblen*, 54 P.3d 371, 374 (Ariz. App. 2002) (explaining such payments "are made on the child's behalf to meet his or her needs"); *In re Marriage of Newberry*, 805 N.E.2d 640, 643-44 (Ill. App. 2004) (adoption subsidies are benefits belonging to the children); *Strandberg v. Strandberg*, 664 N.W.2d 887, 890 (Minn. App. 2003) (same); *A.E. v. J.I.E.*, 686 N.Y.S.2d 613, 615 (N.Y. Sup. 1999) (same); *Gambill v. Gambill*, 137 P.3d 685, 690 (Okla. Civ. App. 2006) (same).

money is not considered income available to the foster parent."[20]  We consider the adoption subsidies to be similar to child support received for other children and conclude they should not be included in a parent's income for purposes of Rule 90.3.[21]  The superior court thus correctly decided that Melody is not required to include the adoption subsidy as income for purposes of Rule 90.3.

### 3.    Tax credits

Gregory next argues that the superior court erred in not counting Melody's tax refund as income.  He specifically argues that Melody's Earned Income Tax Credit (EITC) should count as income.  The superior court initially required Melody to "include the amount of any tax refund in her calculations, or adjust her calculations to reduce the monthly withholding to an amount that would result in a zero refund."  Melody asked the court to clarify its ruling, arguing that the EITC was a means-based benefit that should not be included in income when calculating child support.[22]  The court then decided that neither party was required to declare income tax refunds as income.

We agree with Melody's superior court argument and hold that the EITC should not be considered income for calculating child support.[23]  Unlike tax credits that

---

[20]    *Bryant v. Bryant*, 218 S.W.3d 565, 569 (Mo. App. 2007) (citing *In re Paternity of M.L.B.*, 633 N.E.2d 1028, 1029 (Ind. App. 1994)).

[21]    *Cf.* Alaska R. Civ. P. 90.3 Commentary, III.A ("Child support is not income.").

[22]    *See id.* ("Means based sources of income . . . should not be considered as income.").

[23]    In an unpublished memorandum opinion we previously ruled that the superior court should include any tax credits received by a parent when calculating income under Rule 90.3.  *Wedman v. Wedman*, Mem. Op. & J. No. 1206, 2005 WL 628806, at *4 (Alaska, Mar. 16, 2005).  But in that case the argument that the EITC
(continued...)

only reduce an individual's tax, any EITC amount exceeding the actual tax obligation can be refunded to that individual and is considered a payment.[24]  The EITC is available only to low-income households,[25] and the credit amount depends on household income as well as the number of qualifying children.[26]  Federal courts have identified several purposes of the EITC:  (1) "to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income"; (2) "to stimulate the economy by funneling funds to persons likely to spend the money immediately"; and (3) "to provide relief for low-income families hurt by rising food and energy prices."[27]  Several states exclude the EITC from income for purposes of calculating child support, either through judicial decision[28] or rules and regulations.[29]  Because the EITC is only available to and intended

---

[23]      (...continued)
should be excluded from income because it was means based was not raised, and we have not considered this specific issue before.

[24]      *Sorenson v. Sec'y of the Treasury of U.S.*, 475 U.S. 851, 854 (1986).

[25]      *See In re Steinmetz*, 261 B.R. 32, 35 (Bankr. D. Idaho 2001) (noting that EITC eligibility ends when income is $30,850).

[26]      26 U.S.C. § 32 (2006).  In tax year 2012 the maximum credit is $5,891 for households with three or more qualifying children, $5,236 for those with two children, and $3,169 for those households with only one qualifying child.  *See* http://www.irs.gov/ Individuals/EITC-Income-Limits,-Maximum-Credit-Amounts-and-Tax-Law-Updates.

[27]      *Sorenson*, 475 U.S. at 852.

[28]      *Brausch v. Brausch*, 265 S.W.3d 837, 840-41 (Ky. App. 2008); *Riggs v. Riggs*, 622 N.W.2d 861, 867 (Neb. 2001).  *See also T.E.N. v. T.J.C.*, 2003 WL 22476257 at *5 (Del. Fam. Ct., Aug. 20, 2003) (refusing to include EITC in mother's income for child support purposes because formula excluded needs-based credits).

[29]      *See Marrocco v. Giardino*, 767 A.2d 720, 724 n.6 (Conn. 2001) (quoting regulation excluding EITC from income for child support purposes); *Walker v. DeMoss*,

(continued...)

to benefit low-income families, we consider it a means-based source of income not countable for calculating child support.[30] The superior court therefore did not err in not counting Melody's EITC as income.

### D. The Superior Court Did Not Err In Its Decision About The Children's Permanent Fund Dividends.

Gregory next argues that the superior court abused its discretion in permitting Melody to deposit the children's Permanent Fund Dividends "into investment accounts of her choosing." The parties' initial agreement provided that Melody would apply for the children's Permanent Fund Dividends each year and place the money in an investment account. In the litigation related to the cross-motions to modify, the parties disputed whether either or both parents had borrowed money from the children's accounts and whether that money had been repaid. The superior court found that "any loans taken by either parent from the children's accounts [were] deemed satisfied." The court permitted Melody to move the money to different accounts, but prohibited withdrawals except to pay the children's taxes or for reinvestment. The court required Melody to provide an accounting "in accordance with the original decree." We see no error in the superior court's decision in light of the parties' inability to cooperate and their original agreement.

---

[29] (...continued)
781 N.W.2d 101, 2010 WL 624237 at *2 (Iowa App., Feb. 24, 2010) ("Gross monthly income does not include public assistance payments or the earned income tax credit." (quoting Iowa Ct. R. 9.5)).

[30] Gregory did not mention other types of tax credits in this appeal. The record reflects that both parties claimed other tax credits that were considered payments on their federal tax returns. We express no opinion about the other credits.

**E.  The Superior Court Did Not Err In Requiring Gregory To Maintain A Life Insurance Policy.**

Gregory contends the superior court erred in requiring him to maintain a life insurance policy on himself for the children's benefit.  Gregory maintains that the parties' original agreement required only Melody to maintain a life insurance policy.  He also argues that his "current will and life insurance policy fulfill the obligation" and that Social Security would "fulfill[] the obligation that the court feels is needed."  Gregory thus raises two issues:  whether the superior court correctly construed the original dissolution agreement and whether it correctly found he was not in compliance with the agreement.

The original agreement between the parties said that the "obligee will maintain a life insurance policy which names the children as beneficiar[ies]."  Because Gregory had to pay monthly child support to Melody, he was the obligor, and she was the obligee.  In the litigation related to the parties' cross-motions to modify, Melody argued that under the terms of the agreement Gregory was required to obtain a life insurance policy for the benefit of the children; she asked the court to require Gregory to provide proof of that insurance.  In response, Gregory did not deny that he was required to obtain a life insurance policy — he argued instead that his will would provide adequate financial protection for the children.

After the hearing on the cross-motions, Gregory filed a copy of his will together with a pleading discussing Social Security benefits, which he thought would "cover the concerns that ha[d] arisen at the trial in regard to support for [the] children should [he] die prematurely."  Melody filed an affidavit indicating she had life insurance in the amount of $75,000, with the children listed as beneficiaries.

The superior court found that the original agreement required Gregory "to maintain life insurance on himself for the benefit of the children."  It further found that

"[t]he provisions of [Gregory's] will [were] insufficient to meet this requirement." The superior court ordered Gregory to "purchase and file proof of conforming life insurance designating the children as direct beneficiaries" within 60 days of the date of the order.

We construe settlement agreements in dissolutions using traditional contract principles.[31] The goal of contract interpretation "is to give effect to the reasonable expectations of the parties."[32] "We review the interpretation of a contract de novo, with any inferences that the superior court has drawn from extrinsic evidence being reviewed for 'support[] by substantial evidence.' "[33]

Substantial evidence supports the superior court's finding that the parties intended Gregory to carry a life insurance policy for the children's benefit. Gregory did not dispute in his pre-hearing pleadings that the agreement required him to carry life insurance with the children as beneficiaries, nor did he dispute that the purpose of the insurance provision was to benefit the children in case Gregory died before they were adults. Although the agreement said that the obligee was required to carry life insurance, the parties used the wrong term to identify who had an obligation several places in the agreement. For example, the dissolution petition said that rather than use income withholding for child support payments, the "obligee will make automatic funds transfers to obligor's bank." The petition also provided that the "obligee" would receive half of the residential property equity; under the terms of the agreement, Melody retained the house and paid Gregory his share of the equity. Given the purpose of the insurance

---

[31]    *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012) (citing *Zito v. Zito*, 969 P.2d 1144, 1147 n.4 (Alaska 1998)).

[32]    *Id.* (quoting *Knutson v. Knutson*, 973 P.2d 596, 600 (Alaska 1999)).

[33]    *Burns v. Burns*, 157 P.3d 1037, 1039 (Alaska 2007) (quoting *Wahl v. Wahl*, 945 P.2d 1229, 1231 n.2, 1232 n.3 (Alaska 1997)) (alteration in original).

provision and the other uses of "obligee" in the dissolution petition, the superior court did not err in interpreting the parties' agreement as requiring Gregory to purchase life insurance naming his children as beneficiaries.

The superior court also did not clearly err in finding that Gregory's will and potential Social Security benefits did not fulfill his obligation under the dissolution agreement. The agreement required Gregory to maintain a life insurance policy with the parties' two children as beneficiaries. Gregory's will did not fulfill this obligation, nor did the possibility of Social Security payments for the children. We thus affirm the superior court's order requiring Gregory to maintain a life insurance policy with the children as beneficiaries.

Gregory asks in the alternative that Melody be ordered to carry a reciprocal policy and that the superior court designate a policy coverage amount. The record indicates that Melody already has a policy naming the children as beneficiaries. While we have "approve[d] the use of [life] insurance as security for a support obligation where appropriate,"[34] the amount and type of insurance can be left "to the ingenuity of lawyers, judges, insurance brokers and actuaries."[35] The superior court was not required to specify a policy coverage amount differing from Melody's existing policy.

F.      **The Superior Court Did Not Err In The Attorney's Fees Award.**

Gregory argues that the award of attorney's fees to Melody was erroneous. Melody's actual attorney's fees exceeded $20,000, and the court awarded her $7,500, representing 75% of what the court found to be reasonable fees. The court initially applied AS 25.24.140(a), authorizing the award of attorney's fees while a divorce action is pending. After Gregory moved for reconsideration, the superior court acknowledged

---

[34]     *H.P.A. v. S.C.A.*, 704 P.2d 205, 210 (Alaska 1985).

[35]     *Id.* at 210 n.4.

it had "identified the wrong statute" in its attorney's fees ruling. The court noted that AS 25.20.115 was controlling,[36] but after applying that statute decided the amount of fees would remain unchanged.

Gregory argues on appeal that: (1) the superior court erred by applying the Rule 82 divorce exception to award Melody fees; (2) he prevailed and is entitled to a Rule 82 attorney's fees award; and (3) he cannot afford to hire his own attorney, let alone pay for Melody's attorney. Gregory does not acknowledge that the superior court changed the basis of its attorney's fees award after Gregory's motion for reconsideration.

Three types of attorney's fees standards can apply in child custody and support cases: (1) the "divorce exception to Rule 82" in initial custody determinations; (2) AS 25.20.115 in proceedings to modify custody and visitation; and (3) Rule 82 in postjudgment child support modification and enforcement proceedings.[37] As the superior court noted, the Martins were not before the court for an initial custody determination, so AS 25.24.140(a) and the divorce exception to Rule 82 did not apply. And because the primary focus of the Martins' cross-motions concerned modification of child custody and visitation, the superior court correctly relied on AS 25.20.115 as the basis for its fee award. Finally, based on the record before us, we cannot conclude that the superior court abused its discretion in awarding attorney's fees to Melody under the statute.

---

[36]     AS 25.20.115 provides: "In an action to modify . . . [a custody or visitation order], the court may . . . award attorney fees and costs . . . .  In awarding attorney fees and costs under this section, the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith."

[37]     *Collier v. Harris*, 261 P.3d 397, 409 (Alaska 2011); *see also Rowen v. Rowen*, 963 P.2d 249, 257 (Alaska 1998) (modifying custody or visitation); *Bergstrom v. Lindback*, 779 P.2d 1235, 1238 (Alaska 1989) (determining initial custody and support); *Patch v. Patch*, 760 P.2d 526, 531 (Alaska 1988) (deciding postjudgment child support modification and enforcement).

## V. CONCLUSION

For the foregoing reasons, we REVERSE the child support award and allocation of federal tax deductions for the children and REMAND to the superior court for further proceedings on those issues. In all other respects, we AFFIRM the superior court's decisions.