NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID SPIGAI, | ) | |
| | ) | Supreme Court No. S-18321 |
| Appellant, | ) | |
| | ) | Superior Court No. 1KE-06-00279 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| DEBORAH SPIGAI, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1994 – October 11, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Trevor Stephens, Judge.

Appearances: Leif Thompson, Leif Thompson Law Office, Ketchikan, for Appellant. No appearance by Appellee Deborah Spigai.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.     INTRODUCTION

A teenaged daughter of divorced parents gained acceptance to a private university. The young woman's father, who did not support her decision to attend that university, refused to supply the proof of income required to complete the university's need-based financial aid application. The mother filed an expedited motion asking the superior court to order the father to supply this information. The superior court

---

[*]     Entered under Alaska Appellate Rule 214.

concluded that the parties' dissolution agreement required the father to do so and granted the mother's motion. The father appeals, arguing that (1) the superior court erred by failing to hold an evidentiary hearing and (2) the superior court's order violated his First Amendment rights to freedom of speech and association. We reject both of these arguments and affirm the superior court's order.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

David and Deborah Spigai married in 1998. Their first daughter was born in 1999; their second followed in 2004. The couple divorced in 2006. In their 2006 dissolution agreement the parents agreed to share legal and physical custody of both children. They also agreed that David would file Alaska Permanent Fund Dividend (PFD) applications for both daughters and that the "children's PFD goes into their 529 college savings plan."

Deborah assumed primary physical custody of the children in 2017. While David's monthly child support payments to Deborah increased accordingly, the 2017 order modifying child support did not otherwise change the parties' 2006 agreement. David filed a second motion to modify child support in January 2021 that identified the PFD and $7.94 in interest as his only income. He included an incomplete 2020 tax return that omitted his name, signature, and other identifying information. As part of her response to that motion, Deborah shared her 2020 tax return with David and the court in February 2021.

David assisted his elder daughter with her college applications by helping her set up a Free Application for Federal Student Aid (FAFSA) account. Although David did not submit his financial information during his elder daughter's FAFSA process, she was nonetheless admitted to and graduated from college.

The Spigais' younger daughter was accepted to a different private college in late 2021.[1] In order to qualify for institutional need-based financial aid, the college required her to complete both a FAFSA application and a College Scholarship Service (CSS) Profile.[2] She attempted to waive David's participation in her CSS Profile. But she received a notice that her father was required to complete his portion of the CSS Profile and upload his 2020 tax return.

On Friday, December 10 — one week before the college's December 17 financial aid application deadline — Deborah sent David a text message asking him to share his 2020 tax return. She threatened court action if he did not comply. David did not reply. Deborah texted him again on Sunday, December 12, requesting that he upload his income information to his daughter's CSS Profile, FAFSA, or the college's own portal. David did not comply, apparently because he disapproved of his daughter's choice of schools.

## B. Proceedings

On Monday, December 13, Deborah (representing herself) filed an expedited motion to enforce the 2006 dissolution order. Deborah alleged that the dissolution agreement required David to "[p]rovide proof of income, when asked" and asked the superior court to order David to "submit something documenting David's income for 2020" before the college's Friday, December 17 deadline.

The next day David, representing himself, opposed Deborah's motion. David argued that (1) Deborah's reference to the dissolution agreement was

---

[1] The following information about the college's admissions process appears in Deborah's motion to enforce. We accept the truth of these assertions because David does not contest them.

[2] While FAFSA determines federal aid awards, the CSS Profile is an online application used by universities to award institutional aid. *About CSS Profile*, COLLEGE BOARD CSS PROFILE, https://cssprofile.collegeboard.org/about (last visited Sept. 22, 2023).

impermissibly ambiguous; (2) Deborah did not fulfill Alaska Civil Rule 90.3's procedural requirements[3] for requesting his tax return; (3) under our decision in *Dowling v. Dowling*,[4] David had no obligation to provide post-majority educational support; and (4) forcing David to provide his financial information to the college would violate the First Amendment of the U.S. Constitution by "forcing speech."

Deborah filed a reply. She clarified that she wanted the court to order David to give her a copy of his 2020 tax return or, if he had not filed a tax return that year, a signed statement verifying he had no income. Neither David nor Deborah requested oral argument or an evidentiary hearing.

The superior court granted Deborah's motion.[5] It ordered David to, "by the December 17, 2021 deadline if at all reasonably possibl[e], fully participate in the . . . financial aid application process[] required by [the] College." The court required David to submit copies of his required financial documents, including his tax return, to Deborah or directly to the college and to complete "the forms required of him as a parent."

The superior court agreed with David that it could not order him to provide his 2020 income information to Deborah pursuant to Civil Rule 90.3(e)(2) because she

---

[3]    Civil Rule 90.3(e)(2) provides that "[w]hile there is an ongoing monthly support obligation, either party must provide to the other party, within 30 days of a written request, documents such as tax returns and pay stubs showing the party's income for the prior calendar year. The party making the request must provide documentation of his or her annual income for the same period at the time the request is made."

[4]    679 P.2d 480, 483 & n.7 (Alaska 1984) (explaining that while children lack a statutory right to post-majority educational support, "divorcing parents can still enter into an agreement to provide for the post-majority educational support of their children").

[5]    The superior court stated that Deborah had not filed a reply at the time of its order.

had not followed the rule's procedures for requesting it.  It also recognized that under our decision in *Dowling*, David had no obligation to provide post-majority educational support to his children unless he had entered into an agreement to do so.  But it concluded that the dissolution agreement required David to assist with his daughters' college financial aid applications.  It reasoned that the dissolution agreement's provision for David to deposit the children's PFDs in a college savings account implied an agreement that the children could attend college and that "both parents [would] take the steps reasonably required by the college admission process, including applying for financial aid."  The court explained that it sought to "give effect to the reasonable expectations of the parties, considering the terms of their agreement, the ends sought to be achieved by the agreement, [and] any extrinsic evidence of their intent at the time the contract was entered, including the parties' subsequent conduct."  The court explained that "under Alaska law there is an implied covenant of good faith and fair dealing in every contract, and that David's refusal to participate in [his daughter's] financial aid process . . . would be a violation of the same."[6]  The court also noted that "nothing in the [2006 dissolution agreement] . . . indicates that a child could not attend the college of the child's choosing, or that a parent would, in effect, have a related veto right."  Finally, the court assigned weight to the fact that David had saved his children's PFDs in college savings accounts in accordance with the dissolution agreement and "that he had assisted with [his elder daughter's] FAFSA process, which reflects that the parties have to this point abided by the order as construed herein."

---

[6]     *See Casey v. Semco Energy, Inc.*,  92 P.3d 379, 384 (Alaska 2004) ("A party [to a contract] must act in subjective good faith, meaning that it cannot act to deprive the other party of the explicit benefits of the contract, and in objective good faith, which consists of acting in a manner that a reasonable person would regard as fair." (citing *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997))).

The superior court rejected David's other arguments. It pointed out that requiring David to complete forms and submit financial information to complete the financial aid process did not require him to provide post-majority support. And it considered his "cursory" First Amendment argument waived.

David did not comply with the court's order. Instead, he moved for reconsideration. He argued that the college savings accounts provision in the dissolution agreement was "simply for tax treatment purposes" and did "not constitute a categorical contract." David also criticized the court's unwillingness to consider his First Amendment argument. Finally, he accused the superior court of "bias, partiality, prejudice, and unfitness" and of "provid[ing] legal representation for Deborah." The superior court denied David's motion for reconsideration without further explanation.

David appeals. Deborah does not participate in the appeal.

## III. DISCUSSION

David raises two arguments on appeal. First, David argues that the superior court impermissibly interpreted the dissolution agreement without holding an evidentiary hearing.[7] Second, David argues that the freedom of association clause of the First Amendment to the United States Constitution prohibits the superior court from requiring him to provide his financial information to the college. We conclude that the superior court was not required to hold an evidentiary hearing and that David's First Amendment argument lacks merit.

### A. The Superior Court Did Not Err By Interpreting The Dissolution Agreement Without Sua Sponte Conducting An Evidentiary Hearing.

David argues that the superior court erred because it did not conduct an evidentiary hearing before interpreting the college savings plan provision. David did

---

[7] Because the failure to hold an evidentiary hearing is the only contract interpretation error David raises on appeal, we do not address the substance of the superior court's interpretation of the dissolution agreement.

not request an evidentiary hearing. But he argues the court was required to hold one because (1) the contract term the court relied on was ambiguous; and (2) courts must always hold evidentiary hearings to determine the equities before enforcing an agreement concerning children's PFDs. Both of these arguments lack legal support.

Alaska law does not require superior courts to hold an evidentiary hearing to interpret every ambiguous contract provision. In *Hartley v. Hartley* we clarified that we had "never stated that an evidentiary hearing was required [to interpret a property division agreement], or that an evidentiary hearing is invariably required to resolve every dispute about ambiguous terms in a settlement agreement."[8] To the contrary: "An evidentiary hearing is not necessary if there is no genuine issue of material fact."[9] In *Hartley* we determined that there were no disputed facts material to the spouses' agreement on the formula used to determine the division of retirement benefits; it was "only a legal dispute over the proper interpretation of the property settlement agreement."[10] Because there was no genuine issue of material fact, the superior court did not err in denying the party's request for an evidentiary hearing.[11]

David did not request an evidentiary hearing to interpret the terms of the dissolution agreement before the superior court's initial order. We acknowledge that David is a self-represented litigant who was responding to an expedited motion and lacked notice of the contract interpretation theory that the superior court adopted in its decision. But we need not decide whether David waived his request for a hearing

---

[8]   205 P.3d 342, 350 (Alaska 2009).

[9]   *Id.* (citing *Routh v. Andreassen*, 19 P.3d 593, 596 (Alaska 2001)).

[10]   *Id.* at 347, 350.

[11]   *Id.* at 350.

because his appellate briefing does not establish a genuine dispute of material fact that required an evidentiary hearing to resolve.[12]

Like the appellant in *Hartley*, David introduced new evidence of the parties' course of dealing in his motion for reconsideration. David argues that, had the superior court held a hearing, the evidence would have swayed the court in his favor. But the court need not hold a hearing just to *consider* extrinsic evidence. A hearing must be held only if the extrinsic evidence conflicts — only then must the court resolve the factual dispute before deciding how to interpret the contract.[13]

David does not identify any material conflicting evidence. On appeal he points to certain facts alleged in his motion for reconsideration: (1) an assertion that he had "always considered the 529 account to be his legal property"; (2) that he "had saved and contributed to this account" with his personal funds while Deborah had not; and (3) that Deborah had used some of the girls' PFD money for expenses. Yet David does not point to any place in the record showing that Deborah disputed those assertions. Without a dispute of material fact to resolve, there was no need for the superior court to hold an evidentiary hearing in order to interpret the parties' agreement. The lack of hearing was therefore not error.

Alternatively, David argues that our precedent requires the court to hold an evidentiary hearing whenever it must decide whether to enforce an agreement concerning children's PFDs. But the cases David cites do not establish such a rule.

---

[12] *See C.L. v. State, Dep't of Admin., Off. of Pub. Advoc.*, 500 P.3d 995, 1001 n.23 (Alaska 2021) ("[W]e exercise our independent judgment in determining whether there are genuine, material factual disputes that cannot be resolved without an evidentiary hearing." (alteration in original) (quoting *Johnson v. Johnson*, 239 P.3d 393, 406 (Alaska 2010))).

[13] *Hartley*, 205 P.3d at 350.

In *Martin v. Martin* we affirmed a decision allowing a divorced parent to continue depositing her children's PFDs in investment accounts of her choosing.[14] The parties "disputed whether either or both parents had borrowed money from the children's accounts and whether that money had been repaid."[15] The superior court made factual findings to resolve this dispute.[16] We did not state that an evidentiary hearing is required when there are no disputed issues of material fact.[17]

*Wells v. Barile* concerned a child support order that instructed divorced parents to equally split their son's PFD each year.[18] The mother had withheld the father's PFD share for several years because he refused to pay uninsured medical expenses pursuant to the child support order.[19] We reversed the superior court's money judgment in favor of the father and instructed the court to determine on remand whether the father's share of the medical expenses was offset by the amount of PFD money the mother owed him.[20] We left it to the court's discretion to hold an evidentiary hearing, depending on the sufficiency of the factual record.[21] But we never suggested a hearing is required absent conflicting evidence.

---

[14]    303 P.3d 421, 428-29 (Alaska 2013).

[15]    *Id.* at 428.

[16]    *See id.* (stating only that "[t]he superior court found that any loans taken by either parent from the children's accounts [were] deemed satisfied").

[17]    *Id.* at 428-29.

[18]    358 P.3d 583, 590 (Alaska 2015).

[19]    *Id.* at 586.

[20]    *Id.* at 590.

[21]    *Id.*

Finally, nothing in *Teseniar v. Spicer* suggests that a hearing is automatically required before an agreement concerning children's PFDs may be enforced.[22]

The superior court did not err by not holding an evidentiary hearing.

**B.**  **The Superior Court's Order Requiring David To Fulfill His Contractual Obligations Did Not Violate His First Amendment Rights.**

The superior court rejected David's First Amendment argument as waived due to inadequate briefing.  David argues that because he was a self-represented litigant, the superior court should have provided him with a hearing or warned him that his argument was inadequately briefed before deeming the argument waived.

"[S]o long as the essence of the self-represented litigant's argument can be easily discerned from the briefing, and the opposing party would not be prejudiced by its consideration, it should be considered."[23]  It is true that David did not do much to articulate his First Amendment argument in the proceedings below.  Yet Deborah did not clearly spell out her arguments either, and the superior court went to some length to discern them when ruling on her motion.  Even so, any error in this regard is harmless because David's First Amendment argument fails on the merits.

Citing a recent United States Supreme Court decision, *Janus v. American Federation of State, County, & Municipal Employees, Council 31*,[24] David claims that the First Amendment freedom of association permits him to withhold support from "any

---

[22]  74 P.3d 910, 912-13, 916-17 (Alaska 2003).

[23]  *See Leahy v. Conant*, 447 P.3d 737, 742-43 (Alaska 2019) (quoting *Adkins v. Stansel*, 204 P.3d 1031, 1033 (Alaska 2009)); *see also Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) (explaining we "consider pro se pleadings liberally in an effort to determine what legal claims have been raised" (citing *Toliver v. Alaska State Comm'n for Hum. Rts.*, 279 P.3d 619, 622 (Alaska 2012))).

[24]  138 S. Ct. 2448 (2018).

private institution that he does not want to be associated with." The United States Supreme Court held in *Janus* that individuals cannot be made to subsidize the speech of other private speakers.[25] But the superior court did not require David to contribute financially to the college his daughter wished to attend. Instead, the superior court ordered David to participate in the college's financial aid process by sharing required financial documents with Deborah and "completing the forms required of him as a parent." Court-ordered disclosure of financial information is not compelled speech that violates the First Amendment.[26] Nor is an obligation to share one's financial information with a college as part of the financial aid process the kind of "intimate" or "expressive" association that implicates the First Amendment.[27]

Moreover, "[t]he First Amendment does not 'provide a right to "disregard promises that would otherwise be enforced under state law." ' "[28] The superior court

---

[25]     *Id.* at 2463-65.

[26]     *See United States v. Sindel*, 53 F.3d 874, 877-78 (8th Cir. 1995); *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2317 (2023) ("[T]he government may sometimes 'requir[e] the dissemination of purely factual and uncontroversial information.' ") (quoting *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995)).

[27]     *Cf. Fraternal Ord. of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011) (describing First Amendment's protection for free association as extending to: "(1) 'intimate association,' when individuals 'enter into and maintain certain intimate human relationships,' and (2) 'expressive association,' when individuals 'associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion' " (quoting *Roberts v. U.S. Jaycees*, 428 U.S. 609, 617-18 (1984)).

[28]     *State v. Alaska State Emps. Ass'n/Am. Fed'n of State, Cnty. & Mun. Emps. Loc. 52, AFL-CIO*, 529 P.3d 547, 558 (Alaska 2023) (quoting *Belgau v. Inslee*, 975 F.3d 940, 950 (9th Cir. 2020)); *see also Cohen v. Cowles Media*, 501 U.S. 663, 671-72 (1991) (explaining that the First Amendment does not grant "limitless protection" for speech and concluding that "the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law").

concluded that David was contractually obliged to participate in his daughters' financial aid process, and as we explained above David failed to show that the superior court erred in reaching that conclusion. Even if David's participation in the financial aid process were speech or association, the First Amendment would not excuse David from speech or association that he contracted to make.[29] David's First Amendment argument therefore fails.

## IV. CONCLUSION

For the reasons above, we AFFIRM the superior court's order.

---

[29] *See Ramon Baro v. Lake Cnty. Fed'n of Tchrs. Loc. 504, IFT-AFT/AFL-CIO*, 57 F.4th 582, 587 (7th Cir. 2023) ("[T]he First Amendment protects our right to speak. It does not create an independent right to void obligations when we are unhappy with what we have said.").