Thomas TESENIAR, Appellant,

v.

Lynda SPICER, f/k/a Lynda Teseniar, Appellee.

Nos. S–10632, S–10685, S–10686.

Supreme Court of Alaska.

Aug. 1, 2003.

Thomas A. Teseniar, pro se, Jefferson City, Missouri, Appellant.

No appearance by Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Thomas Teseniar challenges the superior court's modification of his child support obligation, claiming that the superior court lacked jurisdiction under the Uniform Interstate Family Support Act, erred by increasing his obligation without applying Alaska Civil Rule 90.3, and erred by making the increase retroactive to April 15, 1999. Teseniar also appeals the superior court's decision concerning the amount of unreimbursed medical costs for which he is liable, the court's order that he must deposit funds into his children's educational accounts, and the court's award of attorney's fees to Lynda Spicer. We hold that the superior court erred in retroactively increasing Teseniar's obligation to April 15, 1999 and in failing to perform Rule 90.3 calculations in setting the amount of support. We affirm the remainder of the challenged rulings.

## II. FACTS AND PROCEEDINGS

Thomas Teseniar and Lynda Spicer married in Anchorage in 1995. They had two children: Samantha, born in January 1996, and Robert, born in October 1997. Teseniar and Spicer separated in August 1997. Teseniar moved to Missouri in March 1998; Spicer and the children stayed in Alaska. In November 1998 Superior Court Judge Brian C. Shortell granted the parties a decree of divorce and issued findings of fact and conclusions of law incorporating the parties' settlement of all disputed issues. The parties agreed that Spicer would have sole legal and primary physical custody of the children and agreed on an initial child support arrangement. In February 1999 the court issued its child custody and support order, based on the parties' agreement, decreeing that Teseniar was to pay $257 per month in child support. In July 1999 Judge Shortell issued a new child custody and support order incorporating more clearly the provisions of the parties' settlement agreement. One of the terms of the settlement agreement was that Teseniar was to send his tax returns to the Child Support Enforcement Division (CSED) each year "by the earlier of his IRS filing or April 15."

On March 8, 2000, Spicer moved to modify child support and moved for a finding of contempt for Teseniar's failure to provide her with his tax returns. Although Teseniar eventually filed an opposition to this motion, his opposition was not timely, and one day before it was received, Judge Shortell granted Spicer's motion to modify Teseniar's monthly support obligation retroactive to April 15, 1999. The exact amount of the modified support obligation was to be determined in the future. In August 2000 Superior Court Judge Karen L. Hunt issued an order increasing Teseniar's monthly child support obligation to $778.91, basing the amount on the Palmer superior court's calculation of Teseniar's child support obligation for two children from a previous marriage. Judge Hunt made the new monthly support amount retroactive based on Judge Shortell's order.

At a hearing in October 2000, Superior Court Judge Milton M. Souter ordered the state to provide copies of Teseniar's tax returns to Spicer. Judge Souter also heard arguments about child support and unpaid medical expenses. At a November 2000 hearing, the parties presented evidence and further arguments on these issues. In April 2001 Superior Court Judge Sharon L. Gleason issued an order finding $658.61 in unreimbursed medical expenses for the parties' children for 1999 and 2000 and ordering Teseniar to pay Spicer half this amount. Judge Gleason also awarded Spicer attorney's fees.

In September 2001 Judge Gleason denied Teseniar's motion for Spicer to reimburse the children's educational accounts for the Permanent Fund Dividends (PFDs) that she was supposed to, but allegedly had not, deposited;

instead, Judge Gleason ordered Teseniar to deposit funds into the accounts.

In December 2001 Teseniar moved to vacate Judge Hunt's support modification order and to strike Spicer's motion for modification, alleging that they were inconsistent with the Uniform Interstate Family Support Act (UIFSA). Judge Gleason denied this motion and then granted Spicer attorney's fees.

Teseniar has filed three appeals which we have consolidated, challenging: (1) the child support modification order, with attorney's fees; (2) the unpaid medical costs order, with attorney's fees; and (3) the order concerning reimbursement of the children's educational accounts.

## III. DISCUSSION

### A. The Superior Court Had Jurisdiction Under the Uniform Interstate Family Support Act.

Teseniar argues that Judge Gleason erred by denying his motion to vacate Judge Hunt's August 2000 child support modification order and to strike Spicer's March 2000 motion for modification because the superior court lacked personal and subject matter jurisdiction in accordance with the UIFSA, adopted in Alaska as AS 25.25. Teseniar contends that the superior court did not have personal jurisdiction over him and did not have subject matter jurisdiction to modify the child support order after he moved to Missouri in 1998. We exercise our independent judgment when reviewing a superior court's interpretation and application of a statute, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy." [1]

The UIFSA defeats Teseniar's argument. Alaska Statute 25.25.201 provides a variety of alternative bases for personal jurisdiction over a non-resident in a proceeding to modify a support order; there is jurisdiction if the non-resident individual (1) "submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction"; (2) "resided with the child in this state"; (3) "resided in this state and provided prenatal expenses or support for the child"; or (4) "engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse[.]" Teseniar participated in support proceedings here for several years, including the period of more than a year between the modification order and his motion to vacate it.[2] He lived in Alaska with Samantha, agreed to pay for Spicer's expenses relating to her pregnancy with Robert and Robert's birth, and presumably conceived the children here. The superior court thus had personal jurisdiction over Teseniar.

Alaska Statute 25.25.205 makes clear that the superior court also had jurisdiction over the support order. That statute provides that a tribunal of this state will have continuing, exclusive jurisdiction over a support order it issues "as long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued" or "until each individual party has filed written consent with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction." [3] Spicer and the children still reside in Alaska, and the parties filed no written consent for another state to modify the order. The statute does state that an Alaskan tribunal cannot modify a support order "if the order has been modified by a tribunal of another state under a law substantially similar to this chapter." [4] But while the order

---

1. *Fleegel v. Estate of Boyles*, 61 P.3d 1267, 1270–71 (Alaska 2002) (internal quotations omitted).

2. Teseniar's submission to Alaskan jurisdiction can also be found in his opposition to Spicer's motion to modify support, in which he noted that he was fighting Spicer's attempt to register the decree in Missouri. Teseniar described Spicer's attempt as "inappropriate" and "wrong," said there was "no logical reason to move enforce-

ment to Missouri," and maintained that Spicer should be ordered to work with Teseniar through Alaska CSED to solve any disputes on support.

3. AS 25.25.205(a)(1), (2); *see also State, Child Support Enforcement Div. v. Bromley*, 987 P.2d 183, 188–89 (Alaska 1999).

4. AS 25.25.205(b).

was registered in Missouri, the Missouri court did not modify the support order.[5] Alaska thus maintained jurisdiction.

Teseniar relies on section 611 of the UIFSA[6] for his argument that the Alaska courts lacked subject matter jurisdiction because Spicer was required to file her modification motion in the state of residence of the obligor, namely Missouri. Teseniar's focus on AS 25.25.611 and the comparable Missouri provision is irrelevant, however, because when a court exercises personal jurisdiction over a non-resident, AS 25.25.301–.701 do not apply except for two small exceptions that are unrelated to this case.[7] Furthermore, this reliance is misplaced. Alaska Statute 25.25.611 and Missouri Statute 454.973 basically say: When a support order issued in another state has been registered in this state, a tribunal of this state may modify the order only if (1) none of the parties or the children live in the issuing state, the petitioner is a non-resident seeking modification, and a tribunal of this state has personal jurisdiction over the respondent; or if (2) a tribunal of this state has personal jurisdiction over the child or one of the parties and all of the parties have filed written consent in the issuing tribunal that a tribunal of this state may modify the order and assume continuing, exclusive jurisdiction over it. The issuing state in this case is Alaska. Because Spicer and the children live in Alaska and there has been no written consent, Missouri could not modify the order under its statute.[8] Because Alaska therefore retains continuing, exclusive jurisdiction,[9] Judge Gleason did not err in denying Teseniar's motion to vacate Judge Hunt's modification order and to strike Spicer's motion for modification due to lack of jurisdiction under the UIFSA.

### B. The Superior Court Abused Its Discretion When Modifying the Child Support Order.

Teseniar contends that the superior court erred both by increasing his child support obligation in retaliation for his refusal to supply Spicer with his tax returns and by making the order retroactive to April 15, 1999. In her March 8, 2000 motion to modify, Spicer sought to increase Teseniar's support obligation effective April 15, 1999 because she maintained that he was supposed to provide tax documents by then for purposes of recalculating support. In her memorandum in support of that motion, she asked in the alternative to make the support award effective as of the filing of the motion on March 8, 2000. The proposed order she submitted contained the April 15 date, and despite striking a proposed finding of contempt for failure to file tax returns, Judge Shortell signed this order with the retroactive April 15 date still intact. When Judge

---

5. See Mo.Rev.Stat. § 454.946–.953, .971–.973 (1997) (explaining registration of order for enforcement and restrictions on modification, which have not been satisfied here).

6. AS 25.25.611 in Alaska, Mo.Rev.Stat. § 454.973 (1997) in Missouri.

7. AS 25.25.202 (allowing tribunal to "apply AS 25.25.316 to receive evidence from another state and AS 25.25.318 to obtain discovery through a tribunal of another state").

8. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Wallace v. Delaney, 962 P.2d 187, 191–92 (Alaska 1998) (concluding that Alaska retained exclusive jurisdiction over support order and that CSED could collect interest from obligor because obligor's child "still resides in Alaska, the issuing state; thus, Washington could not have modified the support order"); cf. State, Child Support Enforcement Div. v. Bromley, 987 P.2d 183, 188–89 (Alaska 1999) (holding that Alaska court could modify Maine support order

because parents and child no longer resided in Maine, obligee was not resident of Alaska and sought modification here, and obligor was subject to personal jurisdiction of Alaska tribunal).

9. The cases and commentary Teseniar cites in support of his argument concern only situations in which "the issuing State no longer has an interest in exercising its continuing, exclusive jurisdiction to modify its order," such as when both parties and the children have moved out of the issuing state. See, e.g., In re Marriage of Abplanalp, 27 Kan.App.2d 833, 7 P.3d 1269, 1270 (2000); Groseth v. Groseth, 257 Neb. 525, 600 N.W.2d 159, 166 (1999). As explained above and as elaborated in the sections of the commentary to UIFSA § 611 that precede the sections quoted by Teseniar in his brief, Alaska still has "an interest in exercising its continuing, exclusive jurisdiction to modify its order" because Spicer and the children reside in Alaska. See Unif. Interstate Family Support Act § 611 (amended 2001), 9 I.B. U.L.A. 96, cmt. at 97–98 (Supp.2003).

Hunt later presided over the case, she increased Teseniar's obligation from $257 a month to $778.91 to conform to the rate calculated by the Palmer superior court in February 1999 for Teseniar's children from a prior marriage, and she made this increase effective April 15, 1999 in conformity with Judge Shortell's order.

We review modifications of child support under an abuse of discretion standard.[10] "We will find an abuse of discretion when our review of the record leaves us with a 'definite and firm conviction based on the record as a whole that a mistake has been made.' "[11] We conclude that both the amount of the increase and the date of retroactivity constituted abuses of discretion.

### 1. Increase in child support obligation

Judge Hunt arrived at Teseniar's child support obligation by adopting the Palmer court's child support obligation figure for Teseniar's children from a prior marriage, *not* merely the other court's estimation of Teseniar's income. By adopting the Palmer court's monthly obligation figure, Judge Hunt did not go through the Rule 90.3 calculations using Spicer's income and allowing deductions such as the child support Teseniar paid for his prior children as provided in Rule 90.3(a)(1)(B).[12] It is unlikely that Teseniar's obligation to his two children with Spicer would be identical to his child support

obligation to the children from his earlier marriage, given that the prior obligation would be factored into the calculation of his current obligation.[13] "Courts must follow the legal standards set forth in Rule 90.3 in determining awards of child support."[14] We therefore conclude that it was an abuse of discretion for Judge Hunt to increase Teseniar's obligation to correspond to the Palmer court's child support obligation figure.[15]

### 2. Retroactive modification

"[A]bsent special circumstances ..., 'courts may not retroactively modify support orders.' "[16] Retroactive modification is statutorily permitted only "when paternity is disestablished and the modification can be implemented without violating federal law, or on the motion of the obligor when there is a clerical mistake or the support order is based on a default amount."[17] Neither of those exceptions is applicable here. Rule 90.3(h)(2) provides, however, that although retroactive modification is generally prohibited, "[a] modification which is effective on or after the date that a motion for modification ... is served on the opposing party is not considered a retroactive modification."[18] By this standard, and as Spicer was apparently aware given the alternative relief she requested, Judge Shortell could not have made Teseniar's child support obligation effective any earlier than March 8, 2000, when Spicer filed her motion to modify. Judge Shortell

---

10. *Flannery v. Flannery,* 950 P.2d 126, 129 (Alaska 1997).

11. *Beaudoin v. Beaudoin,* 24 P.3d 523, 526 (Alaska 2001) (quoting *Kowalski v. Kowalski,* 806 P.2d 1368, 1370 (Alaska 1991)).

12. Rule 90.3(a)(1)(B) provides for a deduction from a parent's total income for "child support and alimony payments arising from prior relationships which are required by other court or administrative proceedings and actually paid."

13. While not ruling on the correctness of CSED's calculation, we note in passing that CSED calculated that Teseniar's child support obligation based on his 1999 tax return should be modified to be $639 per month.

14. *Marine v. Marine,* 957 P.2d 314, 316 (Alaska 1998).

15. *See Monette v. Hoff,* 958 P.2d 434, 437 (Alaska 1998) (remanding because unclear if superior

court adopted CSED's calculation or conducted required de novo determination of child support obligation); *Keating v. Traynor,* 833 P.2d 695, 696–97 (Alaska 1992) (holding that court erred by adopting parties' original privately stipulated support amount instead of modifying support award based on current income in accordance with Rule 90.3).

16. *State, Child Support Enforcement Div. v. Bromley,* 987 P.2d 183, 188 (Alaska 1999) (quoting *Hendren v. State, Dep't of Revenue, Child Support Enforcement Div.,* 957 P.2d 1350, 1352 (Alaska 1998)); Alaska R. Civ. P. 90.3(h)(2).

17. *Hendren,* 957 P.2d at 1352 (citing AS 25.27.166(d) and AS 25.27.195).

18. Alaska R. Civ. P. 90.3(h)(2); *see also Wright v. Wright,* 22 P.3d 875, 878–79 (Alaska 2001).

therefore erred in failing to correct that portion of the proposed order making the obligation effective April 15, 1999.

We note that Judge Shortell struck the proposed finding of contempt from his order, making it unlikely that the retroactivity was meant to be a discovery sanction. However, to the extent that it was meant to be a sanction under Civil Rule 37 for Teseniar's failure to provide Spicer with his tax returns, we observe that the parties' agreement required Teseniar to provide his tax return annually only to CSED, not to Spicer.

### C. The Superior Court Did Not Err in Calculating the Amount of Unpaid Medical Costs Teseniar Owed Spicer for 1999 and 2000.

 Teseniar asserts that Judge Gleason erred in assessing the documentary evidence he submitted concerning unreimbursed medical costs and departed from the parties' agreement as a result. We review under the clearly erroneous standard a superior court's factual findings.[19]

Spicer moved for Teseniar to pay for his half of the children's medical expenses that had not been covered by insurance. Judge Souter directed Teseniar to file with the court a print-out from his health insurance company showing all claims for the children submitted in 1999 and 2000. The documentation that the company provided showed that Spicer had submitted fourteen claims in 1999 and none in 2000. Judge Gleason concluded that the documentation was incomplete because it indicated that it only included reimbursement regarding medical emergency facilities but did not include claims for other expenses such as medications. Judge Gleason therefore relied upon the documentation Spicer had submitted, which consisted of bills, statements, and receipts, and calculated the total costs to be $658.61, for which Teseniar would be liable for half.

Teseniar counters that his documentation is complete and accurate and that no documentation exists for medications or other

services because Spicer failed to submit any other claims. Accordingly, he relies on paragraph 19 of the parties' agreement, which provides as follows: "[Spicer] will be required to apply all known health care coverage options and submit all known claims to the care provider. Coverage benefits sacrificed due to [Spicer's] future failure to submit claims to known carriers when and as required will be [Spicer's] exclusive expense." He therefore calculates that there were only $336.76 of uncovered costs submitted by Spicer, of which he is liable for half. The difference between Judge Gleason's calculation of Teseniar's liability and Teseniar's calculation is $160.92.

 "It is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[20] Because this is a factual question, and because the superior court's resolution was not clearly erroneous, we affirm Judge Gleason's decision to view Teseniar's documentation as incomplete and to instead use Spicer's.

### D. The Superior Court Did Not Abuse Its Discretion in Ordering Teseniar To Reimburse the Children's Educational Accounts.

Teseniar charges that Judge Gleason abused her discretion in departing from the divorce decree by ordering him to deposit $1,924.85 into each of the children's educational accounts when it was Spicer who had failed to deposit the children's permanent fund dividends. Accepting Spicer's claim that she needed the PFD funds to support the children because Teseniar was thousands of dollars in arrears on child support, Judge Gleason determined that having Teseniar deposit the money as an offset against his child support arrearages would serve the dual goals of getting the children the PFDs to which they were entitled and getting Spicer the child support to which she was entitled. Teseniar maintains that Judge Gleason's justification for letting Spicer keep the children's PFDs is outside the scope of the spe-

**19.** *Vezey v. Green,* 35 P.3d 14, 19–20 (Alaska 2001).

**20.** *Knutson v. Knutson,* 973 P.2d 596, 599–600 (Alaska 1999).

cific valid reasons for withdrawals from the children's educational accounts detailed in paragraph 7 of the parties' settlement agreement.

The agreement dictates that the children's PFD funds are to be deposited in educational accounts with Spicer as custodian. No funds can be withdrawn before the children reach majority except for: (1) payment of dividends or capital gains tax; (2) any reason with Teseniar's consent; or (3) uncovered major medical or other similar emergency uses, in which case Spicer must provide Teseniar with proof of the expenses. Judge Gleason recognized this limitation when rejecting Spicer's later attempt to use the PFD funds for the "everyday care and support of the children," noting that such a use falls outside the bounds of the agreement but that "good cause could also be established upon proof of current outstanding arrears on child support and other necessary expenses of the children."

 "Certainly superior courts have authority to modify a child support order. Alaska Statute 25.24.170 confers broad authority to do so."[21] That statute provides for modification of child support, child custody, and alimony.[22] "An order may be modified notwithstanding the fact that it was based on a separation agreement or stipulation signed by the parties."[23] It was within Judge Gleason's discretion to depart from the parties' settlement agreement, as incorporated in the court's original custody findings, to ensure that both Spicer and the children received the benefits intended for

them by those findings.[24] We therefore affirm Judge Gleason's order concerning the children's educational accounts.

**E. The Superior Court Did Not Abuse Its Discretion by Ordering Awards of Attorney's Fees to Spicer.**

 Teseniar contends that Judge Gleason's attorney's fees awards are unfair because he has the right under the U.S. Constitution to due process and thus should not be penalized for seeking review of lower court orders. We review for abuse of discretion a superior court's order to pay another party's attorney's fees.[25] "The trial court's discretion in awarding attorney's fees is broad and its decision will not be disturbed on appeal unless it is 'arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.' "[26]

There is no indication that Judge Gleason awarded attorney's fees as a penalty for appealing to this court; rather, it appears the award was meant to compensate Spicer for some of her expenses incurred in responding to only some of the numerous motions filed by both sides in this case. Teseniar's right to due process was in no way infringed by the attorney's fees awards, and those awards were not arbitrary or capricious. Accordingly, Judge Gleason did not abuse her discretion by awarding Spicer attorney's fees.

**IV. CONCLUSION**

Because the superior court did not undertake its own Rule 90.3 calculations when modifying Teseniar's child support obligation,

21. *Flannery v. Flannery*, 950 P.2d 126, 130 (Alaska 1997).

22. *See Allen v. Allen*, 645 P.2d 774, 776 n. 4 (Alaska 1982) (referring to AS 25.24.170's predecessor, AS 09.55.220). Alaska Statute 25.24.170(a) states:
Subject to AS 25.20.110, any time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, for the appointment of trustees for the care and custody of the minor children or for their nurture and education, ... or for the maintenance of either party to the action.

23. *Curley v. Curley*, 588 P.2d 289, 291–92 (Alaska 1979).

24. *See Hayes v. Hayes*, 922 P.2d 896, 900–01 (Alaska 1996) (holding that superior court did not err in rejecting father's motion that mother repay money borrowed from children's PFDs in part because of court's explanation that mother paid more of child care costs due to father's underpayment of child support).

25. *Nicholson v. Wolfe*, 974 P.2d 417, 427 (Alaska 1999); *Virgin v. Virgin*, 990 P.2d 1040, 1043 (Alaska 1999).

26. *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992) (quoting *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

and because it impermissibly made the obligation retroactive to a date preceding the date of the motion to modify, we REVERSE the superior court's order increasing Teseniar's obligation effective April 15, 1999 and REMAND for calculation of Teseniar's obligation under Rule 90.3 to be effective no earlier than March 8, 2000. We AFFIRM the remainder of the challenged rulings.