NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BARBARA TAGABAN, | ) | |
| | ) | Supreme Court No. S-16589 |
| Appellant, | ) | |
| | ) | Superior Court No. 1PE-00-00018 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| EDWARD TAGABAN, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1692 – August 22, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Petersburg, William B. Carey, Judge.

Appearances: Barbara Tagaban, pro se, Anchorage, Appellant. Notice of nonparticipation filed by Edward Tagaban, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices. Stowers, Chief Justice, dissenting.

## I. INTRODUCTION

Parents signed a child custody and support agreement providing that the father would invest their daughter's Permanent Fund Dividend (PFD) payments in a college savings fund. Following years of litigation over custody and related issues, the mother filed a motion claiming that the father had impermissibly used some of the daughter's PFD payments for other purposes. She asked that the superior court order the

---

\* Entered under Alaska Appellate Rule 214.

father to repay any missing funds.  She also asked that the court grant her legal custody over the funds.  The superior court denied the mother's motion.  We affirm.

## II.    FACTS AND PROCEEDINGS

### A.    Custody Agreement And Allegations Of PFD Mismanagement

Barbara and Edward Tagaban married in 1992, and the marriage was dissolved in 2000.  Their daughter, Briana, was born in 1998.  Upon dissolution, Barbara and Edward were awarded joint legal and shared physical custody of Briana.

In 2002 Edward filed a motion to modify custody in the Petersburg superior court.  After participating in a mediation session, Barbara and Edward agreed to terms to settle the custody and child support issues arising from Edward's motion.  The terms were formalized in a 2003 Child Custody and Child Support Modified Settlement Agreement (Agreement), which the superior court incorporated into an order modifying custody.  They agreed that they would share joint legal custody of Briana and that physical custody would be divided between them on a rotating three-year block schedule.  They also agreed that Edward would be responsible for applying for Briana's PFD; that he would invest the proceeds for Briana's college education; and that he would provide Barbara with quarterly statements of the investment accounts.[1]

---

[1]    The relevant portion of the Agreement reads as follows:

The parties agree Edward will continue applying for Briana's Alaska PFD.  They further agree PFD proceeds paid on Briana's behalf will continue to be invested by Edward for Briana's post-secondary education.  The parent receiving the tax benefit for Briana agrees to pay taxes due on the PFD received by her.  (Edward in 2003, Barbara in 2004, and so on.)  Edward agrees to provide Barbara statements of all of Briana's investment accounts on a quarterly basis.

After signing the Agreement, Barbara and Edward participated in what the superior court would later characterize as a "a regular stream of litigation" over custody and related issues. Over the years, Barbara filed multiple documents alleging that Edward was mismanaging Briana's PFD proceeds and not providing Barbara with statements of Briana's accounts. In a 2006 motion, Barbara asked the court to assign responsibility for the PFD funds to one of Edward's relatives because "Mr. Tagaban has been spending the money and will not provide accounting of the money." (Emphasis omitted.) The court "remind[ed] Mr. Tagaban of his obligation to provide an accounting to Mrs. Tagaban quarterly" but otherwise declined to act. In a 2010 motion, Barbara claimed that Edward had not provided her with dividend statements since the last time they were in court, and claimed that "most of [Briana's] money is gone." Barbara voluntarily dismissed this motion shortly thereafter.

In 2009 Barbara assumed custody of Briana per the Agreement. In 2011 Barbara became homeless. When Edward learned of this, he filed a motion seeking sole physical custody of Briana. During the ensuing litigation, Barbara claimed that Edward had not been sending her information about Briana's accounts. She also stated that the parties had entered into an agreement — apparently coinciding with Barbara's resumption of physical custody of Briana in 2009 — that Briana was to receive half of her dividend and Edward would invest the remainder. The court awarded Edward physical custody of Briana but did not address the other issues Barbara raised.

In a July 2012 motion requesting visitation, Barbara again asked the court to order Edward to provide her with quarterly statements of Briana's college investment accounts. Barbara also claimed that Edward "had spent much of [Briana's] PFD money and it needs to be repaid." In response, Edward admitted that he had not deposited all of Briana's PFD proceeds into investment accounts. However, he claimed that Barbara had requested this "departure from the [A]greement":

Briana has four college accounts . . . containing over $8,600. . . . In recent years, when Briana was living with her mother, I have deposited 50 percent into these accounts and given 50 percent to Barbara. The settlement required all the PFDs to be deposited, but Barbara would call pleading for money for school clothes, food and other essentials and I agreed to this informal departure from the [A]greement. I have taken nothing from the accounts for my household expenses since 2004, and then only when I had custody of Briana. Money was tight those days.

Edward also stated that he had "generally provided annual statements" and would continue to do so, but argued that he should not be required to produce quarterly statements. The court granted Barbara's request for visitation but denied "all other relief sought in [Barbara's] motion . . . for the reasons stated [by Edward]."

In 2013 Barbara filed a motion seeking primary physical custody of Briana. With some reservations, the court awarded primary physical custody to Barbara, citing Briana's preference and a deteriorating relationship between Briana and her father's family. In one of her filings, Barbara again claimed that Edward was not providing quarterly account statements and that the balance in Briana's accounts was much lower than it should have been. The court's order granting Barbara's custody motion did not address these issues.

**B.     Motion To Change The Legal Custodian Of Briana's PFD Funds**

In March 2016, as Briana prepared to graduate from high school, Barbara filed a Motion to Change Legal Custodian of Child's PFD Funds. Barbara again alleged that the balances in Briana's PFD accounts were lower than they would be if Edward had faithfully invested Briana's PFD funds. She asked the court to order Edward to produce all quarterly statements since 2000 and repay any missing funds with interest, and she asked the court to assign her responsibility for managing Briana's PFD accounts.

Edward responded that he and Barbara had "a verbal agreement . . . which departed from the settlement agreement in which half of the PFDs were used for expenses concerning their child." He also noted that Barbara had not followed up on his alleged misuse of Briana's PFD despite raising it in previous litigation. Barbara admitted that there were some years in which she and Edward agreed that Briana was to receive some or all of her PFD, but she said that this occurred only in 2011, 2012, and 2015. She denied the existence of any mutual decision to depart from the Agreement in other years. She also stated that while she had at times asked Edward for money, those requests were "not for money from Briana's PFD."

The court partially granted Barbara's motion by ordering Edward to produce an accounting. The accounting stated that "[f]rom 2003 through 2015 [half] of the PFD payments went into" Briana's college savings accounts. Edward's accounting further stated that Barbara "was told when the practice began that [this] is what was going to happen to the PFD payments, and [that] she did not object to it at that time."

A hearing was held in June 2016. Barbara argued that Edward was responsible for investing 100 percent of Briana's PFD funds from 2000 to 2007, in 2010, and in 2012 per the Agreement and an earlier agreement made at the time of the dissolution. She acknowledged that she had asked Edward for money in the past but denied that she had requested any portion of Briana's PFD payouts.

Edward then testified that his and Barbara's understanding around the time the Agreement was signed was that half of Briana's PFD would be deposited in college savings accounts and the other half would be used for Briana's needs. He said that notwithstanding the text of the Agreement, it was "consensual between both of us" that the funds would be used in this way. At this point the court asked whether Edward was claiming that there was an oral argument that "superseded" the written Agreement;

Edward responded that there was. In response, Barbara flatly denied receiving any PFD money between 2001 and 2007.

In December 2016 the court issued an order denying Barbara's motion. The court first found that Barbara had failed to pursue the PFD issue during prior litigation, despite having the opportunity to do so. It then found that Barbara and Edward orally modified the Agreement "at least twice" — by agreeing that Briana would receive half her PFD, and by agreeing that "some of the PFD funds could be used directly for Briana's benefit" — and that Barbara had asked for financial assistance that Edward had provided. The court stated that Edward "held to the spirit of the parties' agreement," and that given Edward's limited means "the expenditure of some funds for [Briana's] ongoing support was not unreasonable" particularly in light of the "side agreements" between the parties. It also concluded that the informal agreements between the parties and the paucity of reliable records meant that there was no way to determine what, if anything, might be actually owed to Briana at this point.

Based on these findings, the court concluded that (1) Barbara waived or was estopped from pursuing the relief requested; (2) the parties modified the Agreement; (3) Edward's expenditure of the PFD funds was justified by the family's financial circumstances; and (4) Barbara had failed to show that she was entitled to any relief beyond the accounting she had already received. Barbara appeals.

## III.   DISCUSSION

### A.   The Superior Court Did Not Abuse Its Discretion By Not Requiring Edward To Repay Briana's PFD Funds.

On appeal, Barbara argues the superior court abused its discretion "by not requiring Edward to repay Briana for her PFD funds that he spent and misappropriated." We review the superior court's decision not to order Edward to repay funds for abuse of

discretion.[2]  We will reverse "only if the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[3]  "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[4]

There is no law in this state requiring parents to set aside their children's permanent fund dividends.[5]  However, child custody and support orders can include provisions assigning responsibility for managing a child's PFD and limiting acceptable uses of the money.[6]  "[P]arties are expected to comply" with such provisions, and a court can order a parent who misuses PFD funds to repay those funds.[7]

---

[2]     *See Wells v. Barile*, 358 P.3d 583, 590 (Alaska 2015); *Teseniar v. Spicer*, 74 P.3d 910, 916 (Alaska 2003).

[3]     *Martin v. Martin*, 303 P.3d 421, 424 (Alaska 2013) (quoting *Havel v. Havel*, 216 P.3d 1148, 1150-51 (Alaska 2009)).

[4]     *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016) (omission in original) (quoting *Roderer v. Dash*, 233 P.3d 1101, 1107 (Alaska 2010)).

[5]     *See Lee v. Cox*, 790 P.2d 1359, 1363 (Alaska 1990); *see also* AS 43.23.005(c) ("A parent, guardian, or other authorized representative may claim a permanent fund dividend on behalf of an unemancipated minor . . . ."); *Hayes v. Hayes*, 922 P.2d 896, 900-01 (Alaska 1996) (noting "the legislature's silence as to what parents must or should do with PFDs received on behalf of unemancipated minors"); *L.A.M. v. State*, 547 P.2d 827, 832 n.13 (Alaska 1976) (stating that "[t]he right to control and manage" a minor child's earnings and property has been recognized as a constitutionally protected parental right).

[6]     *See Wells*, 358 P.3d at 585; *Martin*, 303 P.3d at 423; *Teseniar*, 74 P.3d at 917.

[7]     *Wells*, 358 P.3d at 590; *see also Teseniar*, 74 P.3d at 916-17; *Zito v. Zito*, 969 P.2d 1144, 1146 (Alaska 1998) (noting the superior court's "inherent power . . . to enforce its decrees" (quoting *Wahl v. Wahl*, 945 P.2d 1229, 1232 (Alaska 1997))).

Recognizing, however, that "[t]he superior court has broad discretion in deciding" child custody and support issues,[8] we have held on several occasions that a court's refusal to order strict adherence to the terms of such provisions does not constitute an abuse of discretion.[9] In *Martin v. Martin*, for instance, parents agreed the mother would place their children's PFDs into an investment account, but the superior court "permitted [the mother] to move the money to different accounts."[10] We held that this was not an abuse of discretion "in light of the parties' inability to cooperate."[11]

Even when parents fail to comply with a court order about the use of their child's PFD funds, we have not always mandated repayment of the funds. In *Wells v. Barile* we considered a custody order that required a mother to apply for her son's PFD but divide it equally with the father.[12] The mother retained the entire PFD for several years, claiming that the father had failed to reimburse her for medical expenses as required by the order.[13] The superior court entered a money judgment in favor of the father, and the mother appealed.[14] We held that the court had abused its discretion.[15] Though acknowledging that "parties are expected to comply with the court's orders with

---

[8]      *Martin*, 303 P.3d at 424 (quoting *Hunter v. Conwell*, 276 P.3d 413, 418 (Alaska 2012)).

[9]      *See, e.g.*, *Wells*, 358 P.3d at 587-88.

[10]      303 P.3d at 428.

[11]      *Id.* at 429. The court also ordered the mother to provide accountings, in accordance with the terms of the parties' agreement. *Id.* at 428.

[12]      358 P.3d at 585.

[13]      *Id.* at 590.

[14]      *Id.*

[15]      *Id.*

regard to custody and the sharing of expenses," we nevertheless concluded that entering a money judgment should be a "last resort," particularly where "each parent alleges that the other owes money."[16] On remand, we directed the superior court to determine whether the mother's retention of the PFDs "partially or wholly offset" the father's failure to assist with the child's medical expenses.[17]

Similarly, in *Teseniar v. Spicer* we held the superior court did not abuse its discretion when it ordered a father to deposit money into his children's educational accounts — even though the divorce decree had required the *mother* to deposit the children's PFDs into those accounts, and she had failed to do so.[18] Noting that the father was in arrears on child support, we concluded that in light of the father's failure to adhere to the terms of the agreement, "[i]t was within [the court's] discretion to depart from the parties' settlement agreement."[19]

Here, as in *Wells* and *Teseniar*, it is clear that a parent did not adhere to the terms of a custody order governing management of the child's PFD. Per the Agreement, Edward was required to invest the "PFD proceeds paid on Briana's behalf" for her college education. However, Edward provided Briana personally with some portion of her PFD in some years. And during the hearing, Edward admitted that he deposited only half of Briana's PFD in investment accounts in most years.

But as in our past cases, in determining whether the court's refusal to order repayment was an abuse of discretion, we consider the circumstances surrounding the deviation from the custody order's provisions. We note the superior court found that

---

[16] *Id.*

[17] *Id.*

[18] 74 P.3d 910, 916-17 (Alaska 2003).

[19] *Id.*

Barbara "agreed at some point that some of the PFD funds could be used directly for Briana's benefit." The court also concluded that Barbara "asked for and received financial support from Edward at various times" and that there were "various sums of money expended for the benefit of both Briana and Barbara by Edward over the years." This language suggests the court credited Edward's testimony that Edward provided some of Briana's PFD funds to Barbara at Barbara's request. Lastly, the court found that Edward had not "been shown to have squandered any funds that were available" for his daughter.

None of these findings are clearly erroneous. We reject a trial court's factual findings only when "left with the definite and firm conviction on the entire record that a mistake has been committed."[20] Here, Edward testified that both parents had agreed that only half of Briana's PFD would be invested and that the remainder was either provided to Barbara or spent on Briana's needs, and Barbara acknowledged that she had received financial assistance from Edward. Barbara argues that the superior court erred in "finding that the parties agreed for Edward to spend PFD money" because the evidence in the record "overwhelmingly contradicted that ruling." However, she acknowledges that "Edward claimed that he only spent PFD money on Briana's reasonable expenses" and that Edward also claimed "Barbara gave permission for Edward to spend half of Briana's dividend for non-college purposes." "[W]hen a trial court's decision of a factual issue depends largely on conflicting oral testimony, the trial court's competence to judge credibility of witnesses provides even a stronger basis for deference by the reviewing court."[21]

---

[20] *Dixon v. Dixon*, 407 P.3d 453, 456 (Alaska 2017) (quoting *Vezey v. Green*, 35 P.3d 14, 20 (Alaska 2001)).

[21] *Id.* at 456-57 (alteration in original) (quoting *Vezey*, 35 P.3d at 20).

In light of these findings, we hold that the superior court did not abuse its discretion. Edward and Barbara both agreed to — and benefited from — Edward's departure from the Agreement. Some of Briana's PFDs were provided directly to Briana while she was in Barbara's custody, and Edward also used the PFDs to provide financial support to Barbara. And Edward did not "squander[]" the funds he withdrew and subsequently spent; rather they were used "to help provide for [Briana's] immediate needs." Given these circumstances, requiring Edward to repay the withdrawn PFD funds would effect an injustice similar to those we sought to avoid in *Wells* and *Teseniar*. Edward's misuse of Briana's PFD is "offset" by Barbara's participation in his deviation from the terms of the Agreement.[22] Accordingly, we affirm the superior court's order concerning repayment of the PFD funds.

**B.      Barbara Has Abandoned Her Request To Be Appointed Custodian Of Briana's PFD Funds.**

Before considering Barbara's other arguments on appeal, we note that in addition to declining to order Edward to repay PFD funds, the superior court also denied Barbara's request to change the legal custodian of the funds. Barbara does not raise this issue in her appellate brief or her points on appeal; she argues that the court erred by declining to order Edward to repay PFD funds but does not claim that she should have been appointed custodian of those funds. We thus conclude that Barbara has abandoned this point on appeal.[23]

**C.      Barbara's Remaining Arguments Are Moot Or Have Been Waived.**

Barbara challenges several other aspects of the superior court's order. First, she disputes the superior court's legal conclusion that she and Edward "modified the

---

[22]     *Wells*, 358 P.3d at 590.

[23]     *See Wasserman v. Bartholomew*, 38 P.3d 1162, 1171 (Alaska 2002).

[A]greement on their own." She argues that the Agreement signed by both parties was a contract governing management of Briana's PFD and that there were no conditions "that would justify a change in the court order." Alaska law is silent on the question whether parents can, in the absence of court action, modify the terms of an agreement governing use of a child's PFD funds that has been incorporated in a court order. We have never stated that they can do so, and we are reluctant to do so here. We conclude, however, that the answer to this question is moot. We are not deciding that Edward and Barbara expressly modified the Agreement; we acknowledge that Edward violated its terms. That is not the basis for our decision not to compel him to repay Briana's PFD. Rather, we hold — consistent with our precedent — that a superior court's decision not to order a parent to repay misused PFD funds does not necessarily constitute an abuse of discretion.[24]

Second, Barbara argues that the court erred in concluding that Edward's expenditure of Briana's PFD funds was "justified by the family's financial circumstances." She states that while a change in the parties' financial well-being can constitute a "material and substantial change of circumstances" sufficient to warrant modification of child support,[25] there was no proof of any such change. However, a motion for modification of child support was not before the court, and the court did not modify Edward and Barbara's custody and support order on the basis of any change in circumstances. Instead, it *denied* Barbara's motion to change the custodian of Briana's PFD.

---

[24]    *See In re Petition for Approval of a Minor Settlement T.V.*, 371 P.3d 599, 601 (Alaska 2016) ("We may affirm the superior court's decision on any basis appearing in the record." (quoting *Pierce v. Pierce*, 949 P.2d 498, 500 (Alaska 1997))).

[25]    *See Curley v. Curley*, 588 P.2d 289, 291-92 (Alaska 1979).

Third, Barbara argues that this case is distinguishable from *Hayes v. Hayes*.[26] In *Hayes* we affirmed the superior court's decision not to enforce an agreement between a mother and her daughter regarding management of the child's PFD because the moving party, the father, was not a party to the agreement.[27] We acknowledge that, like the parties in *Martin*, *Wells*, and *Teseniar*, Barbara could petition the court to enforce the parties' custody agreement. And unlike in *Hayes*, the superior court did not deny that Barbara was entitled to seek the relief she requested. But for the reasons articulated above, we conclude that the court's failure to grant that relief did not constitute an abuse of discretion.

Fourth, Barbara argues that Edward had a fiduciary duty to invest Briana's PFD in accordance with the parties' Agreement. However, this argument is presented for the first time on appeal, and we hold that it is waived.[28] Lastly, Barbara contests the superior court's conclusion that she "waived or is estopped from pursuing" her requested relief due to her failure to "pursue [such relief] in" her earlier motions. Because we hold that Barbara has failed to show that she was entitled to the relief requested, we need not determine whether she waived her right to seek that relief.

## IV. CONCLUSION

We AFFIRM the superior court's order.

---

[26]    922 P.2d 896 (Alaska 1996).

[27]    *Id.* at 900-01.

[28]    *See Wright v. Anding*, 390 P.3d 1162, 1169-70, 1174-75 (Alaska 2017).

STOWERS, Chief Justice, dissenting.

The 2003 settlement agreement was more than an agreement between the parents — it was incorporated into the superior court's order modifying custody. The parents agreed — and the court ordered — that the father would apply for the daughter's PFD, invest the proceeds of her PFD into a college investment account, and provide the mother with quarterly statements.

In the proceedings forming the basis of this appeal, the superior court found, and the record supports, that the father repeatedly failed to comply with the court's order. The court found that the parents had orally modified the court order at least twice and that the father's expenditure of PFD funds was justified by the family's financial circumstances.

In its decision today, this court holds that the superior court did not abuse its discretion by not requiring the father to repay the PFD funds, stating that "we have held on several occasions that a court's refusal to order strict adherence to the terms of [child custody and support] provisions does not constitute an abuse of discretion."[1] However, the three cases the court cites in support of its conclusion do not support the superior court's decision in this case and also do not recognize any ability by the parents to orally modify a court order regarding investment of a child's PFD.

In the first case, *Martin v. Martin*, the mother was originally ordered to place the children's PFD funds in an investment account.[2] The superior court later modified its order, permitting her to move the children's PFD funds to different "investment accounts of her choosing" but still restricted her from withdrawing any of

_____

[1]     Op. 8.

[2]     303 P.3d 421, 428 (Alaska 2013).

the funds, "except to pay the children's taxes or for reinvestment."[3]  And the court still required her to provide an accounting, as in the original decree.[4]  We found no error in that decision.[5]  Thus, the modification in *Martin* was made by the superior court, not by the parents.  Furthermore, the only thing that changed was the specific investment account in which the children's PFD funds were placed.  The PFD funds were still placed in investment accounts for the benefit of the children, unlike in the case at hand, where the parents spent a portion of the daughter's PFD rather than placing it into a college investment account for the daughter.

In the second case, *Wells v. Barile*, the mother was originally ordered to apply for the child's PFDs and divide them equally with the father.[6]  The parents were also required to "share the cost of any reasonable health care expenses not covered by insurance."[7]  Because the father "failed to pay half of their son's uninsured orthodontic expenses pursuant to the . . . order," the mother withheld his half of the PFD funds to "offset [his] half of the PFDs against what he owed her."[8]  "The superior court ruled that [the mother] should have continued to pay [the father] his half of the PFDs . . . regardless of what she thought he owed her and should have sought assistance from the court if she

---

[3]     *Id.*

[4]     *Id.*

[5]     *Id.* at 428-29.

[6]     358 P.3d 583, 585 (Alaska 2015).

[7]     *Id.*

[8]     *Id.* at 590.

wanted him to share in the orthodontic expenses."[9] We concluded that this was an abuse of discretion and remanded for the superior court to make findings about "the amount of the reasonably necessary orthodontic expenses and whether that amount [was] partially or wholly offset" by the amount of PFD funds the mother withheld from the father.[10] Unlike in the case at hand, this was simply a matter of offsetting one debt against the other, not of PFD funds being misused and the court not ordering repayment of the funds.

In the third case, *Teseniar v. Spicer*, the mother was originally ordered to deposit the children's PFD in educational accounts.[11] However, she "needed the PFD funds to support the children because [the father] was thousands of dollars in arrears on child support."[12] Rather than order the father to pay the mother the child support he owed and order the mother to deposit the children's PFD into the accounts, the court simply ordered the father to deposit the amount of money owed for the PFD funds into the accounts as an offset against his child support arrearages.[13] This, the superior court found, "would serve the dual goals of getting the children the PFDs to which they were entitled and getting [the mother] the child support to which she was entitled."[14] We

---

[9]     *Id.*

[10]    *Id.*

[11]    74 P.3d 910, 917 (Alaska 2003).

[12]    *Id.* at 916.

[13]    *Id.*

[14]    *Id.*

found that this arrangement was within the superior court's discretion.[15] As in *Wells*, this was a matter of offsetting one debt against the other, not of PFD funds being misused and the court not ordering repayment of the funds. And as in *Martin*, the PFD funds owed were still ordered to be placed in educational accounts for the benefit of the children, unlike in the case at hand, where the parents spent a portion of the daughter's PFD rather than placing it into a college investment account for the daughter.[16]

Furthermore, none of these cases permit parents to orally modify court orders regarding investments of a child's PFD. And I do not believe that parents should be permitted to orally modify court orders regarding investments of a child's PFD, just as parents cannot orally modify a court's child support order.[17] If the parents wished to modify the order, they should have moved the court to do so.

---

[15]     *Id.* at 917.

[16]     In its opinion today, this court holds that "[the father's] misuse of [the daughter's] PFD is 'offset' by [the mother's] participation in his deviation from the terms of the Agreement." Op. 11. This idea is inconsistent with ancient wisdom that two wrongs do not make a right. Also, this is not a case of equity where the doctrine of unclean hands might apply, *see Shears v. Myers*, 280 P.3d 552, 558 (Alaska 2012); rather, this is a case where the superior court (and this court) has a duty to protect the child's best interests.

[17]     *Cf. Ruppe v. Ruppe*, 358 P.3d 1284, 1290 (Alaska 2015) (" 'The right to support is that of the child,' and therefore the amount of child support calculated under Civil Rule 90.3 cannot be waived or modified other than for good cause. '[A]n agreement between the parties as to child support is not an exceptional circumstance justifying deviations from the guidelines where the agreement requires support less than that called for by the guidelines.' " (alterations in original) (footnotes omitted)(first quoting *State, Dep't of Revenue, Child Support Enf't Div., ex rel Valdez v. Valdez*, 946 P.2d 144, 154 n.15 (Alaska 1997); then quoting *Cox v. Cox*, 776 P.2d 1045, 1049 (Alaska 1989)); *Laughlin v. Laughlin*, 229 P.3d 1002, 1004-06 (Alaska 2010).

I am particularly concerned here because the mother, acting pro se, brought up the PFD issue to the superior court for *years*, and the court repeatedly failed to even address her complaints. Thus, to the extent the superior court ultimately concluded there was no way to determine what was owed to the daughter, the *court* itself bears substantial responsibility for this state of affairs. But I am not convinced the court cannot determine, at least to some extent, how much of the daughter's PFD funds were not deposited in her college investment account. The parents made several admissions about what happened to the PFD funds for at least some of the years. To the extent the father failed to comply with the court's order and did not provide quarterly accounting to the mother, there should be a rebuttable presumption against him that he did not properly make the court-ordered deposits.

In sum, I would hold that the superior court abused its discretion in not determining what PFD amounts were and were not deposited year by year and in not requiring the father to repay the daughter the amount due to her under the court's 2003 order.[18] I respectfully dissent.

---

[18] Under the facts of this case, the daughter may well be a third-party beneficiary to the parents' original agreement, which was incorporated into the court order. Furthermore, the daughter may be the beneficiary of an implied trust; the court order effectively created an implied trust for her benefit when it required the father to apply for her PFD and invest the proceeds into a college investment account for her. *Cf. Jerry B. v. Sally B.*, 377 P.3d 916, 933-34 (Alaska 2016) (affirming the superior court's finding "that 'the act of establishing a 529 [education savings] account constitutes an agreement between the parents to set these funds aside for the children's education' and that 'the children should not suffer more than they already have by having their college funds plundered to meet their parents' needs' " (alteration in original)).